IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SUSAN DRAZEN, o*n behalf of herself and others similarly situated*<br>    Plaintiffs,<br><br>vs.<br><br>GODADDY.COM, LLC,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)    CIVIL ACTION: 1:19-00563-KD-B<br>)<br>)<br>)<br>) |
| JASON BENNETT, o*n behalf of himself and others similarly situated*<br>    Plaintiffs,<br><br>vs.<br><br>GODADDY.COM, LLC,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)    CIVIL ACTION: 1:19-00563-KD-B<br>)<br>)<br>)<br>) |

**ORDER**

This matter is before the Court on Plaintiffs' motion for attorneys' fees, costs, expenses, and service awards. (Doc. 50).

**I.     Background**

On June 9, 2020 this Court granted Plaintiffs' unopposed motion for preliminary class certification and preliminary approval of the class settlement agreement. (Doc. 49). Thereafter, Notice of the Settlement was sent to over 1.26 million potential Settlement Class members. As of the date of Plaintiffs' motion, over 15,600 claims have been submitted, there have been no objections to the proposed Settlement and only three individuals opted to be excluded from the Settlement Class. (Doc. 50 at 7).

1

Plaintiffs[1] bring this proposed class action alleging GoDaddy.com, LLC (GoDaddy) violated the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227. Specifically, Plaintiffs allege that GoDaddy violated the Act by placing calls and sending text messages to Plaintiffs' cellular telephones, marketing its products and services. Plaintiffs allege that these calls and text messages were sent using an "automatic telephone dialing system" (ATDS), as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A). Further, Plaintiffs contend GoDaddy's contacts were not made for emergency purposes and were made using an autodialing system that did not require human intervention. Plaintiffs also allege that GoDaddy did not have their prior express written consent to place the calls or send the text messages.

The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" "to any telephone number assigned to a paging service, cellular telephone service…" 47 U.S.C. § 227(b)(1)(A), 227(b)(1)(A)(iii).

## II.     **Attorneys' Fees**[2]

---

[1] The parties refer to "Plaintiffs" throughout their filings to refer to Susan Drazen, Jason Bennett, and John Herrick collectively. (Doc. 41 at 1); (Doc. 20-1 at 2); (Doc. 20 at 7). But see (Doc. 40 at 1, n.1 (indicating John Herrick is not a named plaintiff in the case but his related case is incorporated into and resolved by the settlement)).

[2] Plaintiffs state "Class Counsel have spent over 5,423.2 hours in attorney time in litigating these Actions, amounting to a lodestar of $2,800,053.00 million…" plus potentially 80-160 hours in additional time for the remainder of the case. (Doc. 50 at 16). According to Plaintiffs, this lodestar "cross-check" supports that the fees requested here are reasonable; the 3.69 multiplier used to arrive at the fees requested is also reasonable. (Doc. 50 at 17). The 11th Circuit does not require that a lodestar cross-check be done in determining common benefit fee awards. *See In re Home Depot*, 931 F.3d at 1091 n.25 (noting that while courts often use a cross-check, "[w]e do not mean to suggest that a cross-check is required. A lodestar cross-check is a time-consuming exercise."). *See, e.g., Thorpe v. Walter Investment Mgmt. Corp.*, 2016 WL 10518902, at *11 (S.D. Fl. October 17, 2016) (noting that a lodestar cross-check is not required in the Eleventh Circuit); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we *may* refer to that figure for comparison." (emphasis added)); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fl. 2011) (rejecting objectors' request for the court to scrutinize "voluminous time and task records" in evaluating the fee in a common fund case and noting "[t]he lodestar approach should not

Plaintiffs request a common fund fee award amounting to $10,500,000 in attorneys' fees. (Doc. 50 at 7).

"The Supreme Court has acknowledged that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.' " In re Sunbeam Sec. Litig., 176 F.Supp.2d 1323, 1333 (S.D. Fla. 2001) (citation omitted); see Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). "In considering a fee award in the class action context, the district court has a significant supervisory role." Waters v. International Precious Metals Corp., 190 F.3d 1291, 1293 (11th Cir. 1999). Courts are given "great latitude in formulating attorneys' fee awards subject only to the necessity of explaining its reasoning." Id. (internal quotation omitted). "The court's order on attorney's fees must allow for meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." Norman v. Housing Authority of Montgomery, 836 F.2d 1292, 1304 (11th Cir. 1988). As the Supreme Court explained in Mills v. Elec. Auto-Lite Co., 396 U.S. 375 (1970):

> While the general American rule is that attorneys' fees are not ordinarily recoverable as costs, both the courts and Congress have developed exceptions to this rule for situations in which overriding considerations indicate the need for such a recovery. A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself. To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense.

Mills, 396 U.S. at 391-92.

---

be imposed through the back door via a 'cross-check'"); Wilson v. Everbank, 2016 WL 457011, at *19 (S.D. Fl. Feb. 3, 2016) ("'Under Camden I, courts in this Circuit regularly award fees based on a percentage of the recovery without discussing lodestar at all.'" (quoting Checking Overdraft, 830 F. Supp. 2d at 1363)).

"[A]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." Faught v. American Home Shield Corp., 668 F.3d 1233, (11th Cir. 2011) (quoting Camden I Condominium Ass'n v. Dunkle, 946 F.2d 768, 974 (11th Cir. 1991)). Notably, in this Circuit, common-fund fee awards are properly calculated as a percentage of benefits made available to the class, regardless of whether each class member redeems the benefits made available to class members, or even whether unclaimed benefits revert to the defendant. See e.g., Waters, 190 F.3d 1291, 1294-95 (11th Cir. 1999) (upholding an attorney fee award based on the entire settlement fund, even though a portion reverted to the defendant).

"[T]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded a fee because the amount of any fee must be determined upon the facts of each case." Camden I, 946 F.2d at 774-75. The "benchmark" percentage in a percentage-of-fund class settlement case is 25%, which is the dead center of the 20-30% range. *See e.g.*, In re Home Depot Inc., 931 F.3d 1065, 1076 (11th Cir. 2019) ("In this Circuit, courts typically award between 20-30%, known as the benchmark range."); Wilson v. EverBank, 2016 WL 457011, *18 (S.D. Fla. 2016) ("[F]ederal district courts across the country have, in the class action settlement context, *routinely* awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases.") (emphasis in original) (quotation omitted); Amason v. Pantry, Inc., 2014 WL 12600263, *2 (N.D. Ala. 2014) ("'[T]he majority of common fund fee awards fall between 20% to 30% of the fund,' with 25% of the fund being viewed as a 'benchmark percentage fee award.'") (quotation omitted); Allapattah Servs., Inc. v. Exxon Corp., 454 F. Supp. 2d 1185, 1201 (S.D. Fla. 2006) ("[I]n determining [fee] ... awards, the 'bench mark' percentage is 25%, 'which may be adjusted up or down based on the circumstances of each case.' ") (quotation

4

omitted); Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 695 (N.D. Ga. 2001) ("[A]ttorneys' fees should be a reasonable percentage of a common fund created for the benefit of the class[ ] and set a 25% recovery as an appropriate 'benchmark.' ") (quotation omitted); Walco Invs., Inc. v. Thenen, 975 F. Supp. 1468, 1470 (S.D. Fla. 1997) (noting that "25% of the common fund is a 'benchmark' "); Camden I, 946 F.2d 768, 775 (11th Cir. 1991) ("In an effort to provide appellate courts a record for review of attorneys' fee awards, district courts are beginning to view the median of this 20% to 30% range, i.e., 25%, as a 'bench mark' percentage fee award which may be adjusted in accordance with the individual circumstances of each case.").

Where a requested fee "exceeds 25 percent of the claims," the Eleventh Circuit encourages courts to apply the factors set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974),[3] *abrogated on other grounds by* Blanchard v. Bergeron, 489 U.S. 87, 109 (1989) to determine the reasonableness of the requested fees in light of the outcome of the case. *Faught*, 668 F.3d at 1242 (citation omitted); see Camden I, 946 F.2d at 775 ("[T]he *Johnson* factors continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases."). The *Johnson* factors include:

> (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Faught, 668 F.3d at 1242-43 (citing Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983)).

---

[3] In Bonner v. Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on October 1, 1981.

"[O]ther pertinent factors [courts should consider] are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees required by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." Allapattah, 454 F.Supp.2d at 1202 (citation omitted).

Here, Class Counsel's requested fee award represents 30% of the total potential $35 million common fund, amounting to $10,500,000 payable from the settlement. (Doc. 50 at 7; Doc. 50-1 at 47 (explaining Settlement Class Member's Award could be reduced on a pro rata basis to cover costs such as attorneys' fees)).[4]

The Court concludes that the fee should be 25% of the Common Fund as opposed to the requested 30%. The Court has considered the Johnson factors since the fee requested exceeds the average benchmark of 25%. The issues in this case were not complex and did not require more than the average skill required of litigation in federal court. Moreover, the results obtained for the plaintiffs ($35 dollars or a $150 voucher) do not justify an award at the high end of the benchmark. The Court acknowledges the significant effort expended to reach the Settlement in this case. "Indeed, awarding a 25% rather than a 30% fee in this case does not in any way indicate that Class Counsel has not done exceedingly well in litigating…on behalf of the Class." Swaney v. Regions Bank, 2020 WL 3064945, *7 (N.D. Ala. 2020). Here, if Class Counsel received a 30% fee, the average rate would be $1,936.12 per hour. This realized hourly rate far exceeds the customary hourly rate in this legal community. Thus, the Court finds the benchmark percentage fee award

---

[4] Defendants agreed not to oppose a fee request that constituted no more than 30% of the Total Settlement Amount plus reimbursement of reasonable, documented litigation costs and expenses. (Doc. 50-1 at 26).

reasonable and appropriate here. The Court will approve attorneys' totaling 25% of the Common Fund, $8,750,000.00.

### III. Cost and expenses

"Plaintiffs' counsel are entitled to be reimbursed for their reasonable expenses when they create a benefit for all class members." Parsons, 2015 WL 13629647, at *15 ("Counsel contributed to the creation of the Settlement Fund, and accordingly, are entitled to receive a reimbursement of their out-of-pocket expenses in the [requested] amount.") (citing In re Telectronics Pacing Sys., Inc., 137 F. Supp. 2d 985, 1036 (S.D. Ohio 2001)); Enter. Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 250 (S.D. Ohio 1991) (holding that the plaintiffs' counsel was entitled to the full recovery of their expenses from the common fund).

Here, Class Counsel requests reimbursement of expenses totaling $105,410.51. (Doc. 50 at 26). These expenses include costs "related to filing fees, travel expenses, copying, mediation fees, and case administration with the potential of more expenses yet to come." (Doc. 50 at 26). The Settlement Agreement states that "Defendant agrees not to oppose a request" for "reimbursement of reasonable, documented litigation costs and expenses." (Doc. 50-1 at 26). The notices sent to putative Settlement Class Members stated Class Counsel would seek reimbursement of same. (Doc. 50-1 at 47, 53). As of the date this motion was filed, there have been no objections to this request. (Doc. 50 at 7). Class Counsel submitted declarations establishing these expenses were reasonable, necessary and incurred for the benefit of the Settlement Class. (Doc. 50-2 at 11 (McGuire Decl. at ¶ 20); Doc. 50-3 at 7 (Cox Decl. at ¶ 18); Doc. 50-5 at 11 (Bock Decl. at ¶ 20)). Class Counsel also state they had "strong incentive[s] not to expend any funds unnecessarily" since Class Counsel was "responsible for advancing all expenses." (Doc. 50-2 at 11 (McGuire Decl. at ¶ 20); Doc. 50-3 at 7 (Cox Decl. at ¶ 18); Doc. 50-5 at 11 (Bock Decl. at ¶ 20)).

The Court concludes that Class Counsel's costs and expenses were properly incurred and are thus reimbursable. Therefore, Plaintiffs' motion as to costs and expenses (Doc. 50) is due to be granted.

### IV.   Service awards

"There is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." Allapattah Services, Inc. v. Exxon Corp., 454 F.Supp.2d 1185, 1218-19 (S.D. Fla. 2006) (collecting cases awarding incentive awards to compensate named plaintiffs). Service payments "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." Lunsford, 2014 WL 12740375, at *10 (quoting Allapattah Servs., Inc. v. Exxon Corp., 454 F.Supp.2d 1185, 1218 (S.D. Fla. 2006)). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. Id. (citing Ingram, 200 F.R.D. at 694 (awarding class representatives $ 300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award"); citing Spicer v. Chicago Bd. Options Exch., Inc., 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $ 5,000 to $100,000) (awarding $10,000 to each named plaintiff)).[5][6] "[C]lass representative incentive awards

---

[5] In Lunsford the district court said: "The factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class, (2) the degree to which the class benefited from those actions, and (3) the amount of time and effort the class representatives expended in pursuing the litigation." Lunsford, 2014 WL 12740375 at *10 (citing Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).

[6] There is a need for special scrutiny for such awards, especially in the settlement context because of the danger of collusion. See Holmes v. Continental Can. Co., 706 F.2d 1144, 1147 (11th Cir. 1983) ("Settlements entailing disproportionately greater benefits to named parties are proper only when the totality of circumstances combine to dispel the 'cloud of collusion which such settlement suggests.'") (citations omitted). "The inference of unfairness may be rebutted by a factual showing that the higher allocations to certain parties are rationally based on legitimate considerations." Id. at 1148.

are particularly justified 'when the class representatives expend considerable time and effort on the case, especially by advising counsel….'" Columbus Drywall & Insulation, Inc. v. Masco Corporation, 2008 WL 11319972, *2 (N.D. Ga. 2008).

Here, Plaintiffs request a $5,000 service award for each Drazen, Bennett, and Herrick. (Doc. 50 at 27). Defendant agreed not to oppose the request for such service award. (Doc. 50-1 at 26). Plaintiffs represent that no award of any kind was promised to Drazen, Bennett, or Herrick "prior to commencement of the litigation or at any time thereafter." (Doc. 50-2 at 12 (McGuire Decl. at ¶¶ 22-23); Doc. 50-3 at 8 (Cox Decl. at ¶¶ 20-21); Doc. 50-5 at 11 (Bock Decl. at ¶ 21)). Additionally, Drazen, Bennett, and Herrick each participated in discovery, contributed significant time and effort to this case, and "exhibit[ed] a willingness to participate and undertake the responsibilities and risks attendant with brining a representative action." (Doc. 50-2 at 12 (McGuire Decl. at ¶ 22); Doc. 50-3 at 8 (Cox Decl. at ¶ 20); Doc. 50-5 at 11 (Bock Decl. at ¶ 21)). Specifically, Drazen and Bennett participated by meeting with counsel, reviewing documents and pleadings, reviewed settlement documents prior to approval, and participating in discovery including appearing for a deposition. (Doc. 50-2 at 12 (McGuire Decl. at ¶¶ 22-23); Doc. 50-3 at 8 (Cox Decl. at ¶¶ 20-21)).

Plaintiffs also seek an incentive award for Herrick. Plaintiffs contend that though Herrick was not a named representative, he meaningfully participated in this case as his assistance with Class Counsel led to a successful resolution for this litigation; he was the named plaintiff in a case resolved by this settlement; he participated in discovery; and he sat for a deposition. (Doc. 50 at 29; Doc. 50-5 at 11 (Decl. Bock at ¶ 21)). See e.g., Newberg on Class Actions § 17:6 (5th ed. 2016) ("class members who meaningfully participate in the litigation" may be eligible for incentive

awards"); Camp v. Progressive Corp., 2004 WL 2149079, *7 (E.D. La. 2004) (awarding $2,500 to any plaintiff other than the named representative, who gave a deposition).

The incentive awards of $5,000 for each Drazen, Bennett, and Herrick are found to be reasonable considering the services performed by each for the Settlement Class Members. See Swaney v. Regions Bank, 2020 WL 3064945, *8 (N.D. Ala. 2020) (awarding a $7,500 incentive payment to the class representative); CHIS, LLC . Peerless Indemnity Insurance Company, 2016 WL 9185305, *9 (M.D. Ga. 2016) (finding an incentive award of $5,000 reasonable); Youngman v. A&B Ins. and Financial, Inc., No. 6:16-cv-01478, Doc. 70 at 6 (M.D. Fla. 2018) (finding a service award of $10,000 for each Class Representative reasonable); Ingram v. The Coca-Cola, Inc., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding the dour named plaintiffs $300,000 each and awarding smaller awards to other class representatives); Allapattah Services, Inc., 454 F.Supp.2d at 1218-19 (collecting cases approving varying incentive award amounts). This amount shall be paid from the Settlement Fund in accordance with the terms of the Second Amended Class Action Settlement Agreement. (Doc. 50-1).

### V.   Conclusion

Based upon the foregoing, it is **ORDERED** that the Plaintiffs motion for attorneys' fees, costs, expenses, and service awards is **GRANTED in part** and **DENIED in part** as detailed herein. (Doc. 50).

**DONE** and **ORDERED** this the **11th** day of **August 2020**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**