**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **SUSAN DRAZEN, on behalf of herself and other persons similarly situated,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 1:19-cv-00563-KD-B** |
| **GODADDY.COM, LLC, a Delaware Limited Liability Company,** | ) ) ) | **Hon. Kristi K. DuBose** |
| **Defendant.** | ) ) ) ) | |
| **JASON BENNETT, on behalf of himself and other persons similarly situated,** | ) ) ) ) | **Case No. 1:20-cv-00094-KD-B** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) ) | |
| **GODADDY.COM, LLC, a Delaware Limited Liability Company,** | ) ) ) | |
| **Defendant.** | ) ) ) | |

<u>**PLAINTIFFS' RESPONSE TO OBJECTION OF JUAN PINTO**</u>

Dated: October 2, 2020

UNDERWOOD & RIEMER, P.C.
Earl P. Underwood, Jr.
21 South Section Street
Fairhope, AL 36532
Tel: (251) 990-5558
Fax: (251) 990-0626
epunderwood@alalaw.com

[additional counsel listed on signature page]

*Counsel for Plaintiffs and Class Counsel*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

I.    INTRODUCTION .......................................................................................................... 1

II.   BACKGROUND ............................................................................................................ 3

    A.    The Settlement and procedural history. ........................................................ 3

    B.    Bandas' history as a serial objector subject to sanctions. ............................ 4

    C.    Mr. Pinto himself does not voice any objection to the Settlement. ............. 7

III.  ARGUMENT ................................................................................................................. 7

    A.    Any issues with the class notice's disclosure of the objection deadline was at most harmless error that has subsequently been cured. ........................................ 7

    B.    CAFA is inapplicable to calculating Class Counsel's Fee Award given the $35 million in settlement benefits provided. ......................................................... 9

    C.    The Voucher Award is not a coupon under CAFA. ..................................... 11

    D.    Bandas' argument that the Settlement should be disapproved by the Court under CAFA is contrary to the very case law he cites and plainly ignores the facts and circumstances of the case. ......................................................................... 15

    E.    Class Counsel's fee request is appropriate *regardless* of whether CAFA applies. .... 18

    F.    Bandas fails to cite to any supporting caselaw that the settlement should be disapproved unless there is a re-distribution of excess attorneys' fees ...................... 23

    G.    The Settlement provides for sufficient processes to ensure Settlement Class members receive benefits ...................................................................................... 24

IV.   CONCLUSION ............................................................................................................. 24

## TABLE OF AUTHORITIES

### Cases

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ................................................................................16

*Blessing v. Sirius XM Radio Inc.*,
  No. 09-cv-10035, Dkt. 126-4 (S.D.N.Y. 2011) .......................................................20

*Blessing v. Sirius XM Radio Inc.*,
  No. 09-cv-10035, 2011 WL 3739024 (S.D.N.Y. 2011) ...........................................20

*Blessing v. Sirius XM Radio Inc.*,
  507 F. App'x 1 (2d Cir. 2012) ...........................................................................19, 20

*Bodnar v. Bank of America, N.A.*,
  No. 14-cv-03224, Dkt. 83 (E.D. Pa. 2016) ...............................................................5

*Camden I Condominium Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) .........................................................................10, 21

*Clark v. Gannett Co.*,
  428 Ill. Dec. 367, 122 N.E. 3d 376 (Ill. Ct. App. 2018) ...........................................6

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*
  No. 04-cv-3066, 2012 WL 12540344 (N.D. Ga. 2012)............................................22

*CLRB Hanson Indus., LLC v. Weiss & Assocs., PC*,
  465 F. App'x 617 (9th Cir. 2012) ...........................................................................10

*Dardarian v. OfficeMax N. Am., Inc.*,
  No. 11-cv-00947, 2013 WL 12173924 (N.D. Cal. 2013)........................................16

*Deas v. Russell Stover Candies, Inc.*,
  No. 04-cv-0491, 2005 WL 8158201 (N.D. Ala. 2005).............................................20

*Edelson PC v. Bandas Law Firm PC*,
  No. 16-cv-11057, 2019 WL 272812 (N.D. Ill. 2019)............................................1, 6

*Facebook, Inc. v. Duguid*,
  No. 19-511, 2020 WL 3865252 (U.S. 2020) ...........................................................16

*Figueroa v. Sharper Image Corp.*,
  517 F. Supp. 2d 1292 (S.D. Fla. 2007) ...................................................................12

*Garcia v. Target Corp.*,
  No. 16-cv-02574 (D. Minn. 2020) ...........................................................................18

ii

*In re Activision Sec. Litig.*,
　　723 F. Supp. 1373 (N.D. Cal. 1989) ....................................................................21

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
　　281 F.R.D. 531 (N.D. Cal. 2012)..........................................................................5

*In re Continental Illinois Sec. Litig.*,
　　962 F.2d 566 (7th Cir. 1992) ..............................................................................20

*In re Checking Account Overdraft Litig.*,
　　830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...........................................................4, 19

*In re Easysaver Rewards Litig.*,
　　906 F.3d 747 (9th Cir. 2018) ..............................................................................23

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
　　No. 17-md-2800, 2020 WL 256132 (N.D. Ga. 2020)............................................6

*In re HP Inkjet Printer Litig.*,
　　716 F.3d 1173 (9th Cir. 2013) ............................................................................24

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
　　No. 11-MD-02261 (S.D. Cal. 2013) ...................................................................18

*In re: Lumber Liquidators*,
　　952 F.3d 471 (4th Cir. 2020) ...............................................................13, 14, 15

*In re Online DVD-Rental Antitrust Litig.*,
　　779 F.3d 934 (9th Cir. 2015) ..............................................................................10

*In re Optical Disk Drive Prod. Antitrust Litig.*,
　　804 F. App'x 445 (9th Cir. 2020)..........................................................................6

*In re Progressive Ins. Corp. Underwriting & Rating Practices Litig.*,
　　No. 03-cv-01519, 2008 WL 11348505 (N.D. Fla. 2008) ...............................21, 22

*In re Sunbeam Sec. Litig.*,
　　176 F. Supp. 2d 1323 (S.D. Fla. 2001) .................................................................9

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
　　No. 06-cv-0225, 2010 WL 786513 (D. Nev. 2010)...............................................5

*Johnson v. NPAS Sols., LLC*,
　　No. 18-12344, 2020 WL 5553312 (11th Cir. 2020) ...........................................8, 9

*Los Santos v. Millward Brown, Inc.*,
　　No. 13-cv-80670, 2015 WL 11438497 (S.D. Fla. 2015) .....................................17

iii

*Mahoney v. TT of Pine Ridge, Inc.*,
   No. 17-cv-80029, 2017 WL 9472860 (S.D. Fla. 2017) ..........................................................10

*O'Brien v. Brain Res. Labs, LLC*,
   No. 12-204, 2012 WL 3242365 (D.N.J. 2012) ......................................................................11

*Parsons v. Brighthouse Networks, LLC*,
   No. 09-cv-267, 2015 WL 13629647 (N.D. Ala. 2015).............................11, 12, 13, 19, 20, 21

*Pearson v. Target Corp.*,
   968 F.3d 827 (7th Cir. 2020) ...............................................................................................4

*Poertner v. Gillette Co.*,
   618 F. App'x 624 (11th Cir. 2015) .......................................................................................10

*Rose et al. v. Bank of America Corp.,*
   No. 11-cv-02390 (N.D. Cal. 2014) ......................................................................................18

*Salcedo v. Hanna*,
   936 F.3d 1162 (11th Cir. 2019) ...........................................................................................17

*Spillman v. RPM Pizza, Inc.,*
   No. 10-cv-349, 2013 WL 2286076 (M.D. La. 2011)..............................................................17

*Swaney v. Regions Bank,*
   No. 13-cv-00544, 2020 WL 3064945 (N.D. Ala. 2020).........................................................22

*True v. American Honda Motor Corp.*,
   749 F. Supp. 2d 1052 (C.D. Cal. 2010) ...............................................................................12

*Van Patten v. Vertical Fitness Grp., LLC*,
   847 F.3d 1037 (9th Cir. 2017) .............................................................................................17

*Williams v. Bluestem Brands, Inc.,*
   No. 17-cv-1971, 2019 WL 1450090 (M.D. Fla. 2019)...........................................................18

## **Statutes**

47 U.S.C. § 227.........................................................................................................................3

Class Action Fairness Act, 28 U.S.C. § 1712 ............................................................................2

Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).............6

iv

## <u>Other Authorities</u>

Fitzpatrick, Brian T., *The End of Objector Blackmail?*
    62 Vand. L. Rev. 1623 (2009) .................................................................................................4

*Marie Leary, Study of Class Action Objector Appeals in the Second, Seventh, and*
    *Ninth Circuit Courts of Appeals*, Federal Judicial Center (October 2013)................................5

William B. Rubenstein, *Newberg on Class Actions* § 12:11 (5th ed. 2011)...................................10

## I.    <u>INTRODUCTION</u>

Susan Drazen ("Drazen"), Jason Bennett ("Bennett"), and John Herrick ("Herrick") (collectively "Plaintiffs"),[1] working with their Class Counsel, achieved an excellent result for the Settlement Class, making up to *thirty-five million U.S. dollars* ($35,000,000.00) available for settlement of Approved Claims and Settlement Costs, and allowing Settlement Class Members to receive either a Voucher Award worth one hundred fifty dollars ($150), or a thirty five dollar ($35) Cash Award. Ex. A, ¶¶ 19, 47, 48, 50. Notice went out to approximately 1.26 *million* Settlement Class Members, but only eleven (11) class members have chosen to opt out of the settlement, and there has been just one objection. *See* Declaration of Kari Grabowski, Project Manager for the Settlement Administrator, Epiq, attached hereto as <u>Exhibit B</u>, at ¶¶ 4–6.

Given the Settlement Class Members' overwhelmingly positive response to the settlement, it is quite telling that the *only* objection filed was brought by a law firm that is a notorious serial objector that has been subject to extensive criticism for needlessly impeding class action settlements and whose founding member has been *permanently enjoined from practicing law in all federal and state courts of Illinois due to unethical conduct*. *See Edelson PC v. Bandas Law Firm PC*, No. 16-cv-11057, 2019 WL 272812, at *1 (N.D. Ill. Jan. 17, 2019) (filed in this case as an attachment to the *pro hac vice* application of Mr. Clore, Dkt. No. 54, at 6–9).

Given the nature of the Bandas Law Firm's ("Bandas") practice, it is also not surprising that his Objection is meritless. To the extent that there was any prejudice regarding the deadline to object to Plaintiffs' Motion for Award of Attorneys' Fees, Costs, and Expenses, and for Service Awards (Dkt. No. 50) ("Motion for Attorneys' Fees"), it was remedied by the Court's subsequent

---

[1] Unless otherwise stated, capitalized terms have the same meaning as those terms are used in the Second Amended Class Action Settlement Agreement (the "Agreement"), Dkt. 45-1, attached hereto as <u>Exhibit A</u>.

order. Dkt. No. 55. Further, given that Bandas was able to file his Objection challenging Plaintiffs' attorneys' fee request, and that the Court provided ample time – 38 days from the time that Plaintiffs filed their Motion for Attorneys' Fees – for any party to file an objection, the fact that the class notice did not contain the separate deadline for filing any objection to Motion for Attorneys' Fees *sua sponte* set by the Court was at most harmless error.

Nor do Bandas' arguments to the merits of Plaintiffs' Motion for Attorney's Fees – which he attempts to unsuccessfully couch as challenging the adequacy of the settlement itself – fare any better. While Bandas simply presumes that this is a "coupon" settlement under the Class Action Fairness Act, 28 U.S.C. § 1712 ("CAFA"), Bandas ignores the fact that the settlement makes up to $35 million available from which the 1.26 million Settlement Class Members can claim up to a $35 *Cash* Award. Further, in making his argument that Plaintiffs' Motion for Attorneys' Fees improperly seeks an attorneys' fee award that is disproportionate to the amount claimed by class members, Bandas completely ignores binding Eleventh Circuit authority that attorneys' fees should be calculated based on the total amount of settlement benefits made available to the Class.

Indeed, Bandas' Objection is based almost entirely on out-of-circuit authority that ignores the binding Eleventh Circuit case law this Court has already applied in granting preliminary approval of the settlement and preliminarily finding that an award of attorneys' fees to Class Counsel amounting to 25% of the $35 million in settlement benefits made available appears to be reasonable and appropriate. The fact that Bandas makes multiple arguments that the Court should disapprove the settlement as a whole solely based on his challenges to the attorneys' fee award further demonstrates that the Objection is made in bad faith. However, as is common with Bandas objections, his arguments on these points are also unsupported by the facts of the case, as well as

2

the very authority that he cites to for support. For these reasons, and those stated in further detail below, Bandas' Objection should be overruled in its entirety.

## II.    BACKGROUND

### A.    The settlement and procedural history.

As explained in detail in Plaintiffs' Motion for Preliminary Approval (Dkt. No. 20) and Plaintiffs' Motion for Attorneys' Fees, this settlement is the culmination of over four years of litigation and a year of arm's-length and contentious negotiations. The settlement resolves claims brought through three separate class action lawsuits alleging that GoDaddy placed unauthorized calls and text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

As mentioned above, the settlement Agreement negotiated by Class Counsel provides up to $35 million in benefits to approximately 1.26 million Settlement Class Members, with each Settlement Class Member who files a valid, timely claim entitled to their choice of either a $35 Cash Award or a $150 Voucher Award to use like cash for any GoDaddy products or services, in exchange for releasing all claims for having received phone calls or text messages alleged to have been in violation of the TCPA. Ex. A, at ¶¶ 50, 51(a)–(b). A Voucher Award is redeemable online at GoDaddy's website or over the telephone, is fully transferrable, good on all products and services offered by GoDaddy, and requires no minimum purchase. Ex. A, at ¶ 51(b).

Following the Court's Order preliminarily approving the settlement (Dkt. No. 49), notice of the settlement – including the details of the fee award requested – commenced on July 9, 2020, with the Settlement Administrator sending notice to approximately 1.26 million potential Settlement Class Members. Plaintiffs subsequently filed their Motion for Attorneys' Fees on July 24, 2020—over a month before the August 31, 2020 objection deadline. *See* Dkt. Nos. 49, 50.

While the Court originally granted in part Plaintiffs' Motion for Attorneys' Fees and found that 25% of the $35 million in settlement benefits made available to the Settlement Class was a fair and reasonable award (Dkt. No. 51), following the filing of Bandas' Objection, the Court amended its Order to note that the amount awarded "appears reasonable" and that it will conduct a "final evaluation" at the final approval hearing. Dkt. No. 55.

As of the filing of this brief, over 23,524 claims have already been submitted. Grabowski Declaration, Ex. B, at ¶ 7. Importantly, only 11 of more than 1.26 million Settlement Class Members elected to exclude themselves from the settlement and Bandas is the only objector to the settlement. *Id.* at ¶ 6.

### B.    Bandas' history as a serial objector subject to sanctions.

Given that Bandas is the *sole* objector to Plaintiffs' Motion for Attorneys' Fees, it is critical to understand Bandas' practice as a serial objector and the numerous court rulings that have found Bandas to have filed such objections in bad faith—even subjecting his firm to disciplinary action. Bandas frequently engages in what courts and commentators have characterized as "objector blackmail." Fitzpatrick, Brian T., *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1624–25, 1633–41 (2009). Courts across the country have condemned this conduct, which amounts to a shakedown designed to force defendants and/or class counsel to buy off professional objectors so that the class settlement may proceed. *See, e.g., In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011) ("[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing") (quotations omitted, alteration in original). *See also Pearson v. Target Corp.*, 968 F.3d 827, 829 (7th Cir. 2020) (ordering disgorgement of

4

settlement money by objectors engaging in "blackmail by selfish holdouts threatening to disrupt collective action unless they are paid off") (internal quotation omitted).

Mr. Bandas himself "has been excoriated by Courts for this conduct." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) ("Bandas is . . . improperly attempting to 'hijack' the settlement of the Actions from deserving class members and dedicated, hardworking counsel, solely to coerce ill-gotten, inappropriate, and unspecified 'legal fees'"). The shakedown begins at the district court and culminates while the case is pending before the Court of Appeals:

> Objectors' counsel [including Bandas] have a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class.

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 06-cv-0225, 2010 WL 786513, at **1–2 (D. Nev. Mar. 8, 2010).

Bandas is widely recognized as a "professional" (or "serial") objector with suspect motives. Attached hereto as Exhibit C is a compilation of 16 examples of various courts' negative reactions to Bandas' improper objections. *See also Bodnar v. Bank of America, N.A.*, No. 14-cv-03224, Dkt. 83 (E.D. Pa. July 5, 2016). However, that is just a mere fraction of the objections that Bandas has filed throughout the course of his career. According to a Federal Judicial Center ("FJC") study, which mentions Bandas by name over 100 times, Bandas filed 24 notices of appeal of class settlements in just three federal circuits between 2008 and March 2013. *See Marie Leary, Study of Class Action Objector Appeals in the Second, Seventh, and Ninth Circuit Courts of Appeals*, Federal Judicial Center (October 2013), available at https://www.fjc.gov/sites/default/files/2015/Class-Action-Objector-Appeals-Leary-FJC-2013.pdf (last visited September 23, 2020). Moreover, the website www.serialobjector.com lists at least *74*

*objections* in which Bandas has been involved. *See* http://www.serialobjector.com/persons/4 (last visited September 23, 2020).

Bandas' extortionate conduct has become so notorious that a consumer class action law firm went so far as to file a class action lawsuit against his firm under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). *See Edelson PC v. Bandas Law Firm PC*, No. 16-cv-11057, 2018 WL 723287 (N.D. Ill. Feb. 6, 2018). Although the RICO claims were ultimately dismissed, the Northern District of Illinois issued a scathing opinion criticizing Bandas' improper conduct:

> Moreover, the court's own experience with Bandas . . . , as well the accounts of other courts that have condemned Bandas's practices, provide independent grounds for crediting these allegations. The alleged conduct appears to be in bad faith, to have no genuine social value, and to be inconsistent with the ethical standards of the legal profession. Gaming the rules of the legal system solely for personal self-enrichment wastes the time and money of courts and attorneys, wrests funds away from deserving litigants, and tarnishes the public's view of the legal process.

*Id.* at *2.[2]

In short, unlike objectors who challenge class action settlements in good faith and in the best interests of the other class members, Bandas seeks to stall the resolution of class actions and prevent class members from obtaining the relief they are entitled to. As such, like other courts that have previously ruled on objections brought by Bandas, this Court should view Bandas' Objection in the appropriate light given his past objection record.

---

[2] More recently, in May of this year, the Ninth Circuit found Bandas' objection in *In re Optical Disk Drive Prod. Antitrust Litig.*, 804 F. App'x 445 (9th Cir. 2020), to be "frivolous." 804 F. App'x at 446. Similarly, in March of this year, the Northern District of Georgia noted that Bandas' objection was "not in the best interest of the class" and that he "routinely represents objectors purporting to challenge class actions settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain[.]" *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-md-2800, 2020 WL 256132, at *41 (N.D. Ga. Mar. 17, 2020) (citing *Clark v. Gannett Co.*, 428 Ill. Dec. 367, 122 N.E. 3d 376, 380 (Ill. Ct. App. 2018)).

### C.      Mr. Pinto himself does not voice any objection to the settlement.

While Bandas claims that "Mr. Pinto objects to the proposed settlement and attorneys' fee request for the reasons stated herein" (Objection at 6), it is worth noting that Mr. Pinto's declaration does not actually state that he objects to the settlement in any way, that he thinks that the settlement should not be approved, or that Class Counsel's attorneys' fee request should be rejected. Dkt. No. 53-1. In fact, Mr. Pinto filed a claim, and looking solely at the declaration that Mr. Pinto signed, it appears that he does not personally have any qualms with the settlement.

## III.    ARGUMENT

### A.      Any issues with the class notice's disclosure of the objection deadline was at most harmless error that has subsequently been cured.

Bandas challenges the class notice's failure to notify Settlement Class Members of the separate objection deadline to Plaintiffs' Motion for Attorneys' Fees – a deadline that was *sua sponte* ordered by the Court – as violating Settlement Class Members' due process rights. Objection at 12–14.[3] However, Bandas' argument is self-defeating. As Bandas admits, the notice informed Settlement Class Members that they can object to any part of the settlement, including the attorneys' fees sought, by August 31, 2020. *Id.* at 13. Indeed, Bandas himself was under the impression that any objection to the attorneys' fees should be filed by August 31, and that is when he filed his objection to the attorneys' fees sought.

Further, the Court has already set aside its prior ruling granting Plaintiffs' Motion for Attorneys' Fees, stating that it will not enter such order until final review at the final approval hearing. Dkt. No. 55. In essence, Settlement Class Members were informed that they could file an

---

[3] It is worth noting that the proposed preliminary approval order submitted to the Court by Class Counsel did not feature a separate earlier date for the filing of any objections specifically to the Motion for Attorneys' Fees. *See* Dkt. No. 46.

7

objection by August 31, 2020, the Court vacated its prior ruling granting Plaintiffs' Motion for Attorneys' Fees, and the case procedurally tracks the schedule stated in the class notice.

The Eleventh Circuit's recent ruling in *Johnson v. NPAS Sols., LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020),[4] is particularly on point and explains why Settlement Class Members were not prejudiced in any manner and did not have any of their rights violated. In *Johnson*, the district court entered a scheduling order that permitted class counsel to file their motion for attorneys' fees after the deadline for filing any objections. 2020 WL 5553312, at *3. The *Johnson* Court found that the district court erred because Fed. R. Civ. P. 23(h) requires class counsel to file their fee petition in advance of any objection deadline and with sufficient time for settlement class members to review it. *Id.* at *4. However, critically for the circumstances before the Court here, the *Johnson* court found that it was "harmless-error" that the fee petition was submitted only after the objection deadline. *Id.* at *6. The *Johnson* court found that any purported harm failed to "materialize[]" because the objector was able to file an objection to the fee award *and* was able to present it at the final approval hearing after the fee petition had been submitted. *Id.*

Here, just as in *Johnson*, Bandas was able to file his Objection to Plaintiffs' Motion for Attorneys' Fees and is being given an opportunity to present his Objection at the final approval hearing. Dkt. No. 55. Indeed, the circumstances here even further warrant a finding that there was no prejudice to the Settlement Class Members because unlike in *Johnson*, they had over a month to review Plaintiffs' Motion for Attorneys' Fees before the August 31, 2020 objection deadline. Finally, as the Court in *Johnson* explained, there are no due process violations, as the notice

---

[4] Both the class plaintiffs and the objector in *Johnson* have indicated that they intend to seek rehearing *en banc* and have been granted extensions of time to October 22, 2020, to do so.

provided to Bandas and the other Settlement Class Members "informed class members the percentage of the fund that class counsel would seek and, in fact, enabled [Bandas] to file an objection." *Johnson*, 2020 WL 5553312, at *7 n.7. In short, while Bandas raises arguably valid concerns that the Court's previous ruling on Plaintiffs' Motion for Attorneys' Fees may have been premature, none of those concerns have materialized, as evidenced by Bandas' own Objection being filed and heard by the Court.[5]

> **B.      CAFA is inapplicable to calculating Class Counsel's Fee Award given the $35 million in settlement benefits provided.**

Bandas ignores binding Eleventh Circuit authority and the facts of this case when he argues that the Court should review Plaintiffs' Motion for Attorneys' Fees under CAFA. While Bandas focuses almost exclusively on the Voucher Awards available to Settlement Class Members in arguing that CAFA applies here, Bandas largely ignores the fact that the settlement makes up to $35 million available for settlement of Approved Claims and Settlement Costs and from which the 1.26 million Settlement Class Members can claim up to a $35 *Cash Award*. Ex. A, at ¶ 50. As such, and as explained in detail in Plaintiffs' Motion for Attorneys' Fees – and as the Court found in its initial order approving Plaintiffs' fee request – "'[t]he Supreme Court has acknowledged that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" Order on Attorneys' Fees, Dkt. No. 51, at 3 (citing *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001)).

---

[5] It is also self-evident that Bandas' concerns regarding prematurely granting Plaintiffs' Motion for Attorneys' Fees (Objection at 14) has already been addressed by the Court and is now effectively moot.

Indeed, in the Eleventh Circuit specifically, it is well established that class counsel who achieve a collective benefit for the class are entitled to appropriate fees for their services in obtaining such benefit that is a "reasonable percentage of the fund." *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *see also Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015), *denied sub nom*, *Frank v. Poertner*, 136 S. Ct. 1453 (2016). Put simply, while Bandas argues that Class Counsel "cannot recover 25% of any percentage of the total $35 million made available to the class under CAFA" (Objection at 20), Bandas ignores the plain fact that the Court found – based on solid precedent – that it is reasonable to award Class Counsel 25% of the up to $35 million that the settlement makes available for Settlement Costs and Approved Claims, including any approved $35 *Cash* Awards made available to the approximately 1.26 million Settlement Class Members. Order on Attorneys' Fees, Dkt. No. 51, at 3–4.

Bandas fails to cite to *any* Eleventh Circuit authority where it was found that offering class members an alternative form of relief they can choose instead of cash somehow triggers CAFA's coupon provisions and requires the Court to completely disregard the cash benefit the settlement provides to Settlement Class Members. Indeed, the only decision that even touches on the subject is the district court's decision in *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-cv-80029, 2017 WL 9472860 (S.D. Fla. Nov. 20, 2017). However, while Bandas struggles mightily to spin the *Mahoney* decision in his favor, he ultimately concedes that *Mahoney* held that CAFA's regulations do not apply where class members can claim a cash benefit. 2017 WL 9472860, at *6 (citing 4 William B. Rubenstein, *Newberg on Class Actions* § 12:11 (5th ed. 2011); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 952 (9th Cir. 2015); *CLRB Hanson Indus., LLC v. Weiss &*

*Assocs., PC*, 465 F. App'x 617, 619 (9th Cir. 2012); *O'Brien v. Brain Res. Labs, LLC*, No. 12-204, 2012 WL 3242365, at *19 n.8 (D.N.J. Aug. 9, 2012)).[6]

Bandas essentially seeks to penalize Class Counsel for negotiating an alternative Voucher Award and giving Settlement Class Members the choice between the $35 Cash Award and the $150 Voucher Award. Indeed, had Class Counsel simply negotiated for the $35 Cash Award, Bandas' arguments would be entirely moot, even though the Settlement Class Members who chose the $150 Voucher Award would be worse off. Such a result should be rejected.

## C.    The Voucher Award is not a coupon under CAFA.

Further, even disregarding the fact that the settlement Agreement makes a total of up to $35 million available for Settlement Costs and payment of Approved Claims, the Voucher Awards available to those Settlement Class Members who choose them instead of the Cash Award do not bear any of the hallmarks of a coupon settlement or the concerns that Congress sought to address in passing CAFA. Specifically, as the court in *Parsons v. Brighthouse Networks, LLC*, No. 09-cv-267, 2015 WL 13629647 (N.D. Ala. Feb. 5, 2015), explained, "courts have generally considered a coupon settlement to be one that provides benefits to class members in form of a *discount* towards the future purchase of a product or service offered by the defendant." 2015 WL 13629647, at *7 (internal citations omitted) (emphasis in original). Further, coupon settlements, "often do not provide meaningful compensation to class members; they often fail to disgorge ill gotten gains from the defendant; and they often require class members to do future business with the defendant

---

[6] Approaching the issue from a slightly different direction, the Ninth Circuit in the seminal CAFA case *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015), noted that CAFA did not apply because "the claimants . . . had the option of obtaining cash instead of a gift card, undercutting the argument that the settlement forces them to buy from the defendant." *Id.* at 952. Because the Settlement Class Members here are not forced to accept a Voucher Award and are free to obtain the full value of the settlement benefits in cash, CAFA is simply not at issue here.

in order to receive compensation." *Parsons*, 2015 WL 13629647, at *7  (citing *True v. American Honda Motor Corp.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010), quoting *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007)).

In finding that the $30 account credits at issue in *Parsons* were not coupons, the court focused on the fact the account credits were not "discounts" off of the purchase of services, but were "equivalent of cash that can be spent to purchase new services outright." 2015 WL 13629647, at *7. Specifically, the court noted that the defendant's TV programming and services "costs $15 or less per month, and thus can be purchased using the $30 account credit without the outlay of any additional money by the customer." *Id.* at *8. Importantly for the purposes of this case, the court also focused on the fact that the account credits were being provided to current customers, such that they were likely choosing to continue to do business with the defendant not to redeem the credits, but for "independent" reasons. *Id*.

Here, the nature of the Voucher Awards weighs even more heavily in favor of finding that they are not "coupons" under CAFA. At $150, the Voucher Awards clearly provide meaningful compensation to Settlement Class Members. Indeed, like the account credits in *Parsons*, the Voucher Awards allow Settlement Class Members to purchase a variety of products and services from GoDaddy without having to spend *any* of their own money—the Voucher Awards are not simply a discount. For example, the Voucher Awards can be used to purchase a domain name, which starts at $11.99. *See* www.godaddy.com/tlds/com-domain (last accessed October 2, 2020).

In addition, website hosting starts at $5.99 a month, allowing Settlement Class Members to purchase an entire year of website hosting services with the Voucher Award. *See* www.godaddy.com/hosting (last accessed October 2, 2020). Settlement Class Members can also purchase a variety of email services (*see* www.godaddy.com/email/professional-business-email

12

(last accessed October 2, 2020), or a business phone line, which starts at $9.99 a month. *See* www.godaddy.com/smartline (last accessed October 2, 2020). As such, the Voucher Awards made available to the Settlement Class Members here are unlike the account credits at issue in *In re: Lumber Liquidators*, 952 F.3d 471 (4th Cir. 2020) which the Fourth Circuit found were coupons because the "class members will likely have to hand over more of their own money before they can take full advantage of the vouchers" and "in order to entirely replace their defective flooring, class members will be required to spend more money with [the defendant]." 952 F.3d at 490. Here, Settlement Class Members *can* obtain significant and valuable services from GoDaddy without spending any of their own money.

Critically, as the court in *Parsons* noted, many of the concerns underlying CAFA simply are not at issue here because the Settlement Class consists entirely of current and former GoDaddy customers and the violations at issue here do not relate to the quality of the services provided by GoDaddy. *See* 2015 WL 13629647, at \*\*4–5. As such, this case is vastly different from the numerous out-of-district decisions cited by Bandas that provided discounts for purchases of the very same type of merchandise that the class members alleged caused them damage. *See In re: Lumber Liquidators*, 952 F.3d at 476 (settlement of class action lawsuit over formaldehyde emissions of products sold by flooring retailer provided vouchers for purchase of flooring products from the same retailer); *True*, 749 F. Supp. 2d at 1069 (settlement of class action alleging falsely advertised fuel economy standards provided rebates for individuals who purchased a car from the same defendant in the future).

In fact, in the main case that Bandas cites for support, *In re: Lumber Liquidators*, the Fourth Circuit noted that in passing CAFA Congress was concerned with settlements that "provided class members with a $5 to $10 voucher good for future purchases of particular computer hardware . . .

13

products, $55 to use on a purchase of a new crib from a crib produced accused of making defective cribs, and discounted and free bottled water from a company that purportedly misrepresented the source of its water." *In re: Lumber Liquidators*, 952 F.3d at 489 (internal citations omitted). These concerns are clearly obviated here as the Voucher Awards are being offered to former or current GoDaddy customers in a suit that did not allege any qualms with the quality of GoDaddy's services, and can choose the Cash Award if they prefer cash.

Further, this is not a situation where the Voucher Award is a nominal amount that does not have equivalent cash value. In finding that the account credits provided to settlement class members were not equivalent to cash the Fourth Circuit in *In re: Lumber Liquidators* noted that only "about 15% of class members selected the vouchers over the cash award, which demonstrates that class members do not view the vouchers as having the diverse purchasing power of cash." F.3d at 490–91. Here, on the other hand, the percentage of Settlement Class Members who have chosen the Cash Award and the Voucher Award is almost evenly split, with 11,362 electing a Cash Award and 12,161 electing a Voucher Award. Grabowski Declaration, Ex. B, at ¶ 7. This weighs heavily in favor of finding that Settlement Class Members view the Voucher Award as providing significant meaningful relief equivalent to cash.

While Bandas attempts to argue that this is a settlement where "the primary relief is a coupon" and provides for just a "nominal cash award" (Objection at 16–17), the fact that Settlement Class Members have expressed a roughly equal preference for the Cash Award and the Voucher Award undermines Bandas' claim. Not only is the Cash Award sufficient enough that Settlement Class Members did not overwhelmingly choose the Voucher Award, but the Voucher Award was also sufficient for the majority of the Settlement Class Members to determine that it was equivalent to receiving cash.

14

Not only does Bandas rely on entirely out-of-circuit authority in arguing that the Voucher Awards at issue here are "coupons" under CAFA, but Bandas also fails to discuss the actual concerns that CAFA was meant to address and that form the basis of the *In re: Lumber Liquidators* ruling that he heavily leans on. This is none too surprising given Bandas' history of filing frivolous and unreasoned objections for monetary gain. Given the Settlement Class Members' overwhelming support for the relief being provided by the settlement and for being allowed to choose between the Cash Award and the Voucher Award, it appears that the only party that does not have the Settlement Class Members' best interests in mind is Bandas himself, who will undoubtedly stall distribution of these awards for months, if not years, by seeking further review and appeal of any decision that this Court might enter.

**D.     Bandas' argument that the settlement should be disapproved by the Court under CAFA is contrary to the very case law he cites and plainly ignores the facts and circumstances of the case.**

Bandas' argument that the Court should reject the settlement *outright* speaks volumes about whose interest he seeks to represent. Objection at 18–20. Even putting aside that Bandas ignores the fact that this is not a coupon settlement under Eleventh Circuit law and that the Voucher Awards are not coupons under CAFA, there is still no justification for rejecting the settlement even if it somehow falls under CAFA. Bandas argues that the settlement should be disapproved because "counsels' fee will dwarf the actual value of the settlement as realized in the redemption value of the coupons plus whatever cash is claimed[.]" Objection at 18. However, the Fourth Circuit's decision in *In re: Lumber Liquidators* that Bandas cites to extensively explains that, even under CAFA, this alone does not warrant denial of a settlement altogether:

> The Objectors also argue that the settlement is both unfair and inadequate because Class Counsel secured much of the cash from the settlement for themselves. Although the proportion of the common fund cash awarded to Class Counsel in these proceedings gives us some pause, it alone does not mandate vacatur of the

15

district court's decision to approve the settlement. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1051 (9th Cir. 2019) (explaining that attorney's fees award alone, which constituted 50% of settlement cash, did not require vacatur of settlement). In any event, our decision today vacates the Attorney's Fees Order, and that vacatur resolves the Objectors' current contention. We observe, however, that if the district court were to award the same amount of attorney's fees after applying CAFA's "coupon" settlement provisions, that would not render the Settlement Approval Order infirm in light of our deferential standard for reviewing such decisions.

*In re: Lumber Liquidators*, 952 F.3d at 486. Nor can Bandas in good faith cite to the decision in *Dardarian v. OfficeMax N. Am., Inc.*, No. 11-cv-00947, 2013 WL 12173924 (N.D. Cal. July 12, 2013), that involved a settlement that provided for nothing other than a $5 and/or $10 *merchandise* voucher that expired in just 90 days. 2013 WL 12173924, at *2.

Bandas' boilerplate argument that the settlement is not fair, adequate, and reasonable under the factors identified by the Eleventh Circuit in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), also ignores the circumstances of this case and the nature of the Settlement Class Members' claims. Objection at 19–20. While Bandas generally states that TCPA actions "almost always settle" (Objection at 19), he fails to account for the real risk posed to TCPA litigation in the current legal landscape. Specifically, as stated in Plaintiffs' Motion for Attorneys' Fees, in *Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 3865252 (U.S. July 9, 2020), the issue of what constitutes an automatic telephone dialing system ("ATDS") under the TCPA is now before the Supreme Court. A narrow interpretation of the statutory language in the *Facebook* appeal would be completely dispositive of the Settlement Class Members' claims such that, absent this settlement, Class Members face a real and imminent risk of receiving no compensation whatsoever.

Further, as the Court noted after Plaintiffs' filed their Motion for Preliminary Approval (Dkt. No. 30), there is also a circuit split regarding whether certain TCPA violations constitute an

16

injury-in-fact that confer Article III standing. *See Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), *versus Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017). This very issue was extensively discussed by the Court in its Order granting preliminary approval (Dkt. 49) and, if litigated, could have resulted in some Settlement Class Members receiving no benefits whatsoever.

Nor does Bandas provide any pertinent analysis or explanation to support his argument that the relief provided by the settlement is insufficient given the *potential* class damages, and relies on nothing more than deceptive math. Objection at 20. Leaving aside the fact that inherent to any class settlement is a compromise between obtaining the maximum amount of damages and the risk of obtaining no compensation whatsoever, Bandas creates a strawman argument that fails to take into account the full value of the up to $35 million that the settlement makes available for payment of Settlement Costs and Approved Claims, including up to $35 in Cash Awards for the approximately 1.26 million Settlement Class Members.

Thus, even accepting Bandas' hypothetical figure of $630 million in potential class damages, at up to $35 million being made available, the settlement provides for a class recovery of 5% of the potential damages—*not* 0.5%. Objection at 20. More importantly, Bandas fails to undertake any effort to actually look at the range of TCPA settlement awards that courts across the country have found to be fair, reasonable, and adequate, and which support the adequacy of the settlement benefits being made available here. *See, e.g.*, *Spillman v. RPM Pizza, Inc.*, No. 10-cv-349, 2013 WL 2286076, at *4 (M.D. La., June 17, 2011) (approving a settlement creating a $9.75 million fund for unauthorized automated calls, resulting in a settlement payment of approximately $15 per class member); *Los Santos v. Millward Brown, Inc.*, No. 13-cv-80670, 2015 WL 11438497 (S.D. Fla. Sept. 11, 2015) (approving a settlement creating an $11 million fund for allegedly

unauthorized automated calls resulting in a settlement payment of $50 per class member); *Rose et al. v. Bank of America Corp.*, No. 11-cv-02390, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) (approving settlement creating a $32 million fund for unauthorized automated calls, resulting in a settlement payment of approximately $20–$40 per class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-MD-02261 (S.D. Cal. 2013) (approving settlement providing class members with $20 vouchers that could be redeemed for $15 cash); *Garcia v. Target Corp.*, No. 16-cv-02574, Dkt. 191 (D. Minn. July 30, 2019) (preliminary approving a settlement creating a $7.05 million fund for unauthorized automated calls providing for a settlement payment of $70 per class member); *Williams v. Bluestem Brands, Inc.*, No. 17-cv-1971, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) (approving TCPA settlement resulting in approximately $25–$75 per claimant).

The terms of the settlement and the up to $35 million that it makes available for payment of Settlement Costs and Approved Claims, the fact that all of the approximately 1.26 million Settlement Class Members can claim up to $35 in Cash Awards, and the nature of the Voucher Awards, means that CAFA is not in any way implicated in this settlement. Bandas' arguments that, under CAFA, the settlement should be rejected as a whole and is not fair, reasonable, and adequate, are disconnected from the very caselaw that he cites to for support and are contrary to this Court's finding that the settlement is fair as well as the thousands of Settlement Class Members who have filed claims and are satisfied with the outcome.

### E.     Class Counsel's fee request is appropriate *regardless* of whether CAFA applies.

While Bandas attempts to present his Objection as challenging the adequacy of the settlement itself, Bandas is effectively only objecting to the attorneys' fees Class Counsel are seeking. However, the Court should not give Bandas' arguments any weight because, even though CAFA is entirely inapplicable to the settlement, the attorneys' fees sought by Class Counsel are

ultimately appropriate under *any* analysis, as they are adequately supported by Class Counsel's lodestar.

As Bandas himself admits, even if CAFA were applicable to the settlement, the Court may rely on Class Counsel's lodestar to calculate the appropriate amount of attorney's fees. Objection at 21–22 (citing *Parsons*, 2015 WL 13629647, at *9). In fact, the court's analysis in *Parsons* is instructive on this issue. While the court in *Parsons*, as discussed above, found that CAFA did not apply to the settlement, it also ruled that the objector's arguments were ultimately moot because the attorneys' fee award was supported by class counsel's lodestar. 2015 WL 13629647, at *8, *11 (noting that "even if this *were* a 'coupon settlement,' Class Counsel would still be entitled to a fee award based upon the loderstar/multiplier method" and "even if this court were to determine that the Settlement is a 'coupon settlement' subject to CAFA's attorneys' fees provision, which it is not, Class Counsel would still be entitled to seek fees based upon the lodestar method") (emphasis in original); *see also Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 5 (2d Cir. 2012) (finding that "[t]he district court approved the fee award after determining it was reasonable under the lodestar method, which reflects 'the amount of time class counsel reasonably expended working on the action,' and is therefore consistent with CAFA").

Bandas suggests he is unsatisfied with the records submitted by Class Counsel attesting to the lodestar they accrued in this case. Objection at 22 (citing Dkt. Nos. 50-2, 50-3, 50-4, 50-5). Bandas instead urges the Court to undertake a review of "Class Counsel's voluminous time and task records in evaluating the fee request"—an unnecessary review that this Court already rejected. *See* Order on Attorneys' Fees, Dkt. No. 51, at 2 (citing *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362). As the court in *Parsons* made clear, a detailed line-item review of Class Counsel's timesheets is unnecessary to determine whether the attorneys' fees sought are

19

appropriate under a lodestar analysis. *Parsons*, 2015 WL 13629647, at \*15 (finding that class counsel's fee request was reasonable under CAFA without conducting a review of the over 5,922 hours of billable records claimed).

Similarly, in *Blessing*, the Second Circuit found that it was unnecessary to consider the objectors' arguments that the relief provided was a coupon under CAFA because "[t]he district court approved the fee award after determining it was reasonable under the lodestar method, which . . . is . . . consistent with CAFA." 507 F. App'x at \*2–\*3. Critically for purposes of evaluating Bandas' arguments, the Second Circuit found that "the district court independently inspected applicable time and expense records before judging the reasonableness of the requested fee[.]" *Id.* at \*2. The time and expense records that the district court reviewed in *Blessing*, and which the Second Circuit found sufficient, were the same type of time and expense records that Class Counsel submitted here. *See Blessing v. Sirius XM Radio, Inc.*, No. 09-cv-10035, 2011 WL 3739024 (S.D.N.Y. Aug. 24, 2011); *Blessing*, No. 09-cv-10035, Dkt. 126-4 (S.D.N.Y. July 18, 2011).[7]

The court in *Deas v. Russell Stover Candies, Inc.*, No. 04-cv-0491, 2005 WL 8158201 (N.D. Ala. Dec. 22, 2005), similarly found that the "submission of counsels' time expended" "evidenced" that the requested fee award was "reasonable under a lodestar analysis" without requiring a detailed line item review. 2005 WL 8158201, at \*14. In fact, the *Deas* court noted that the very type of detailed review that Bandas seeks is exactly why the lodestar analysis is criticized and disfavored in the Eleventh Circuit. *Id.* at \*13 (noting that "the percentage [of the fund] approach reduces the burden of the Court to review and calculate individual attorney hours and rates and expedites getting the appropriate relief to class members") (citing *In re Continental*

---

[7] Attached hereto as <u>Exhibit D</u>.

20

*Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992); *In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989)).

Nor is there any validity to Bandas' argument that the Court should not apply any multiplier to Class Counsel's lodestar. Objection at 24. Bandas once again relies *entirely* on out-of-circuit authority for the argument that a multiplier is inappropriate when applying a lodestar analysis under CAFA. Objection at 24–25. In so doing, Bandas ignores the directly relevant authority from district courts in the Eleventh Circuit that have found that "even if this were a coupon settlement, Class Counsel would be entitled to seek a fee award based on the lodestar with multiplier method[.]" *Parsons*, 2015 WL 13629647, at *15; *see also In re Progressive Ins. Corp. Underwriting & Rating Practices Litig.*, No. 03-cv-01519, 2008 WL 11348505, at *3, *7 (N.D. Fla. Oct. 1, 2008) (finding that, because of the nature of the class relief, it was "appropriate to use the loadstar method as a cross-check" pursuant to CAFA and that a multiplier was appropriate).

Further, Bandas' attempts to argue that Class Counsel are not entitled to *any* multiplier – based on the Court's ruling that Class Counsel are not entitled to an attorneys' fee award in excess of the 25% benchmark – misconstrues the Court's ruling. Objection at 26; Order on Attorneys' Fees, Dkt. No. 51, at 6–7. As Class Counsel explained in their Motion for Attorneys' Fees, in *Camden I* the Eleventh Circuit found that fee awards range from 20% to as much as 50% of the total benefits provided to the settlement class, with most awards falling between 20% and 30%. Mot. for Attorneys' Fees, Dkt. No. 50, at 8 (citing *Camden I*, 946 F.2d at 774)).

Similarly, as the Court noted in its Order on Plaintiffs' Motion for Attorneys' Fees, the "'benchmark' percentage in a percentage-of-fund class settlement case is 25%[.]" Order on Attorneys' Fees at 4 (collecting authorities). Thus, when the Court found that it would apply the "benchmark" percentage of 25%, rather than Class Counsel's requested 30%, the Court was not

21

ruling that Class Counsel are not entitled to any award for their efforts; rather, to the contrary, the Court noted that it "acknowledges the significant effort expended to reach the Settlement in this case" and "awarding a 25% rather than a 30% fee in this case does not in any way indicate that Class Counsel has not done exceedingly well in litigating . . . on behalf of the Class." Order on Attorneys' Fees at 6 (citing *Swaney v. Regions Bank*, No. 13-cv-00544, 2020 WL 3064945, at *7 (N.D. Ala. June 9, 2020)).

Translating the Court's fee award to Class Counsel's lodestar analysis, by reducing the attorneys' fees award from $10,500,000.00 to $8,750,000.00, the Court essentially found that Class Counsel's request for a 3.69 multiplier of their $2,800,053.00 million lodestar was too high, and reduced it to what would be a 3.12 multiplier under the lodestar method. *See* Order on Attorneys' Fees at 2 n.2. But the Court's fee award ultimately *did* confirm that a multiplier was appropriate. And, in fact, a 3.12 multiplier is well within the range of multipliers commonly applied by other courts in the Eleventh Circuit. *See In re Progressive Ins. Litig.*, 2008 WL 11348505, at *7 (noting that multipliers "between 2.5 and 4" are "reasonable"); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-cv-3066, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26, 2012) (awarding attorneys' fee award of $25 million in a settlement providing for $75 million in settlement benefits and finding that a lodestar multiplier of 4 was appropriate).

Bandas' Objection simply ignores the considerable effort put forth by Class Counsel in litigating this action the Actions to achieve this settlement, including successfully briefing class certification in one case and proceeding with an appeal before the Ninth Circuit in another case, as well as the real and imminent risk posed by the *Facebook* appeal and the shifting nature of whether TCPA violations confer standing. As explained by Class Counsel in their Motion for

22

Attorneys' Fees, and as recognized by the Court, these efforts and risks amply justify the modest multiplier applied by the Court in its Order awarding attorneys' fees.

> **F.      Bandas fails to cite to any supporting caselaw that the settlement should be disapproved unless there is a re-distribution of excess attorneys' fees.**

Bandas' arguments that CAFA requires that the settlement be disapproved until there is a distribution of any excess fees seeks to further extend his flawed logic that, under CAFA, any concerns regarding attorneys' fees require rejection of the settlement as a whole. Objection at 26–27. The case law Bandas cites to, however, entirely fails to support his position.

Specifically, contrary to Bandas' summary of the decision in *In re Easysaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018), the Ninth Circuit actually held that "it is unnecessary to reverse the entire settlement approval in conjunction with our vacatur of the fee award" because "[w]e can . . be confident that class members would not have made different decisions had they known that the fee award would be recalculated" since they will "receive the $20 coupons regardless of the size of the fee award." 906 F.3d at 763.

Here, as in *In re Easysaver Rewards Litig.*, the Settlement Class Members are entitled to claim a $35 Cash Award or a $150 Voucher Award; Bandas fails to provide any explanation for why the Parties would have to renegotiate the amount of relief made available simply because the attorneys' fees are reduced. In fact, the court in *In re Easysaver* further noted that, just as with Bandas' Objection here, "Objector cabined his arguments . . . to attacks on the fee award. We are therefore not presented here with a general challenge to the fairness of the settlement . . . . Absent an explanation of why the settlement as a whole does not pass muster, we will not assume that we must automatically reverse the settlement in conjunction with vacating the fee award." *Id.* And Bandas indeed has not raised any credible challenges to the settlement as a whole, or even more

23

specifically voiced any discontent with the amount of the Cash Award or Voucher Award being made available.

Nor is Bandas' reliance on the decision in *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) any more helpful to him. Contrary to Bandas' assertions, the Ninth Circuit in *In re HP Inkjet* did not discuss "redistribution" of attorneys' fees in any manner, and simply ruled that the parties had put the cart before the horse by seeking an award of attorneys' fees before the redemption value of the coupons could be ascertained. 716 F.3d at 1187. Bandas' arguments here not only rely on out-of-circuit authority that is inapplicable given the settlement benefits provided for here, but also attempt to stretch the cited opinions beyond the point of credibility.

### G.      The settlement provides for sufficient processes to ensure Settlement Class Members receive benefits.

The settlement Agreement provides that the Settlement Administrator will take efforts to deliver any undelivered Voucher Awards and Cash Awards by verifying the mailing information against the information provided in the claim submission and then attempting a second mailing. Ex. A, Dkt. No. 45-1, at ¶ 76(c). The settlement Agreement does not limit the Settlement Administrator's duty to "verify the mailing information," including to send a follow up email if deemed appropriate in an attempt to obtain the correct mailing address. *See* Grabowski Declaration, Ex. B, at ¶ 8. As stated in the declaration of Ms. Grabowski, the Settlement Administrator intends to do just that, which directly undercuts Bandas' point.

### IV.    CONCLUSION

The fact that this settlement is overwhelmingly favored by the Settlement Class Members is reason itself to overrule Bandas' Objection outright and allow the Settlement Class Members to claim the relief that they are entitled to. Indeed, given Bandas' history of filing frivolous objections solely for his own benefit, the fact that no other Settlement Class Member has joined him in

24

objecting demonstrates that there is little question about whose actions are actually to the benefit of the Settlement Class Members.

On the merits, Bandas' objection: is contrary to Eleventh Circuit law regarding fee awards and settlement benefits; relies almost entirely on out-of-circuit authority; and ignores the real and substantial benefit that thousands of Settlement Class Members stand to obtain. For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order overruling Bandas' Objection in its entirety and providing such other and further relief as the Court deems reasonable and just.

Dated: October 2, 2020

Respectfully submitted,

/s/ Eugene Y. Turin
EUGENE Y. TURIN

*Attorneys for Plaintiffs*

UNDERWOOD & RIEMER, P.C.
Earl P. Underwood, Jr.
21 South Section Street
Fairhope, AL 36532
Tel: (251) 990-5558
Fax: (251) 990-0626
epu@urlaw.onmicrosoft.com

MCGUIRE LAW, P.C.
Myles McGuire
Evan M. Meyers (admitted *pro hac vice*)
Eugene Y. Turin (admitted *pro hac vice*)
55 West Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

JRC LEGAL
John R. Cox
30941 Mill Lane, Suite G-334
Spanish Fort, AL 36527
Tel: (251) 517-4753
john@jrclegal.net

BOCK, HATCH, LEWIS & OPPENHEIM, LLC
Robert M. Hatch (*pro hac vice*)
134 N. La Salle St., Ste. 1000

25

Chicago, IL 60602
Tel: (312) 658-5500
service@classlawyers.com

KENT LAW OFFICES
Trinette G. Kent
3219 Camelback Rd., Ste. 588
Phoenix, AZ 85018
Tel: (480) 247-9644
tkent@kentlawpc.com

MARK K. WASVARY, P.C.
Mark K. Wasvary
2401 West Big Beaver Road, Suite 100
Troy, MI 48084
Tel: (248) 649-5667
mark@wasvarylaw.com

MCMORROW LAW, P.C.
Michael J. McMorrow
118 North Clinton St., Suite 108
Chicago, IL 60661
Tel: (312) 265-0708
mike@mjmcmorrow.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2020, I electronically filed the foregoing *Plaintiffs'*

*Response to Objection of Juan Pinto* with the Clerk of the Court using the CM/ECF system. A

copy of said document will be electronically transmitted to all counsel of record.

/s/ Eugene Y. Turin
Eugene Y. Turin, Esq.