**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| SUSAN DRAZEN, on behalf of herself and other persons similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-00563-KD-B |
| GODADDY.COM, LLC, a Delaware Limited Liability Company, | ) ) ) | Hon. Kristi K. DuBose |
| Defendant. | ) ) ) | |
| JASON BENNETT, on behalf of himself and other persons similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:20-cv-00094-KD-B |
| v. | ) ) | |
| GODADDY.COM, LLC, a Delaware Limited Liability Company, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' MOTION & MEMORANDUM IN SUPPORT OF**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated:  November 3, 2020

UNDERWOOD & RIEMER, P.C.
Earl P. Underwood, Jr.
21 South Section Street
Fairhope, AL 36532
Tel: (251) 990-5558
Fax: (251) 990-0626
epunderwood@alalaw.com

[additional counsel listed on signature page]

*Counsel for Plaintiffs and Class Counsel*

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. ii–iii

TABLE OF AUTHORITIES ......................................................................................... iv–vii

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT ......................................................................................................... 2

    A.   The Notice Plan was Effective and Satisfied Rule 23 and Due Process ...................... 3

    B.   Final Approval of the Settlement Is Warranted. ........................................................ 4

        1.   The settlement was reached after extensive discovery, litigation, and arm's
            length negotiation .......................................................................................... 4

        2.   The settlement provides significant relief to the Settlement Class given the
            substantial costs, risks, and potential delay of having proceeded to trial
            instead ........................................................................................................... 5

        3.   The remaining Rule 23(e)(2)(C) factors weigh in favor of approval ...................... 8

    C.   The Court Should Grant Final Certification of the Settlement Class. ........................ 9

        1.   The Settlement Class meets all prerequisites to certification under Federal Rule
            23(a). ........................................................................................................... 9

            i.    The Settlement Class is Ascertainable based on Objective Criteria ........... 9

            ii.   Numerosity .......................................................................................... 10

            iii.  Commonality ........................................................................................ 10

            iv.   Typicality ............................................................................................ 11

            v.    Adequacy ............................................................................................ 11

        2.   The Settlement Class is Certifiable Under Federal Rule 23(b)(3). ....................... 12

            i.    Common questions predominate within the Settlement Class ................... 12

            ii.   A class action is superior to any alternative means of adjudicating
               Settlement Class Members' claims ........................................................ 13

    D.   The Court Should Overrule Bandas' Objection. ...................................................... 14

        1.   Bandas cannot separate themselves from their prolific history as a
            serial objector ............................................................................................ 15

         2.   Bandas fails to provide any evidence that any Settlement Class members were
            deprived of their due process rights ............................................................. 16

         3.   Bandas does not offer any additional support for why the Court should apply
            CAFA ......................................................................................................... 16

         4.   Class Counsel submitted sufficient records for determining the applicable
            lodestar ...................................................................................................... 19

         5.   There is no good faith argument for disqualifying the appointed class
            representatives on the basis of *Johnson v. NPAS Solutions, LLC* .......................... 20

E.    The Court should strike the "objection" of Steven Helfand ....................................... 21

F.    Mr. Helfand's "objection" fails to raise any valid arguments ................................... 23

III.    CONCLUSION ............................................................................................................. 24

## **TABLE OF AUTHORITIES**

### **Cases**

*Arthur v. Sallie Mae, Inc.*,
    No. 10-cv-0198, 2012 WL 90101 (W.D. Wash. 2012)....................................................1

*Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002)........................................................................22

*Bennett v. GoDaddy.com, LLC,*
    No. 16-cv-03908, Dkt. 131 (D. Ariz. 2019)...........................................................4

*Blessing v. Sirius XM Radio Inc.*,
    507 F. App'x 1 (2d Cir. 2012) ....................................................................19, 20

*Braynen v. Nationstar Mortg., LLC,*
    No. 14-cv-20726, 2015 WL 6872519 (S.D. Fla. 2015) ........................................22

*CMart, Inc. v. Metro. Life Ins. Co.,*
    299 F.R.D. 679 (S.D. Fla. 2014).................................................................13, 14

*Deas v. Russell Stover Candies, Inc.,*
    No. 04-cv-0491, 2005 WL 8158201 (N.D. Ala. 2005)..........................................19

*Facebook, Inc. v. Duguid,*
    No. 19-511, 2020 WL 3865252 (U.S. 2020) .......................................................2, 7

*Family Med. Pharmacy, LLC v. Trxade Grp., Inc.,*
    No. 15-cv-0590, 2016 WL 6573981 (S.D. Ala. 2016) .....................................10, 14

*Family Med. Pharmacy, LLC v. Trxade Grp., Inc.,*
    No. 15-cv-0590, 2017 WL 1042079 (S.D. Ala. 2017) ..........................................10

*Florida Trailer and Equip. Co. v. Deal,*
    284 F.2d 567 (5th Cir. 1960) ............................................................................7

*Garcia v. Target Corp.,*
    No. 16-cv-02574 (D. Minn. 2019) ....................................................................1, 6

*Gonzalez v. TCR Sports Broad. Holding, LLP,*
    No. 18-cv-20048, 2019 WL 2249941 (S.D. Fla. 2019) .....................................8, 12

*Herrick v. GoDaddy.com, LLC.,*
    312 F. Supp. 3d 792 (D. Ariz. 2018) ..................................................................6

*In re Easysaver Rewards Litig.*,
    906 F.3d 747 (9th Cir. 2018) ...........................................................................18

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  No. 17-md-2800, 2020 WL 256132 (N.D. Ga. 2020)................................................15, 16, 21

*In re: Home Depot, Inc.*,
  931 F.3d 1065 (11th Cir. 2019) ................................................................................19

*In re HP Inkjet Printer Litig.*,
  716 F.3d 1173 (9th Cir. 2013) ..................................................................................18

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
  No. 11-MD-02261 (S.D. Cal. 2013) .......................................................................1, 6

*In re Capital One TCPA Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015)...........................................................................1

*In re Optical Disk Drive Prod. Antitrust Litig.*,
  804 F. App'x 445 (9th Cir. 2020) ............................................................................15

*Jackson v. Motel 6 Multipurpose, Inc.*,
  130 F.3d 999 (11th Cir. 1997) ..................................................................................13

*James v. JPMorgan Chase Bank, N.A.*,
  No. 15-cv-2424, 2017 WL 2472499 (M.D. Fla. 2017).............................................8

*Johnson v. NPAS Solutions, LLC*,
  No. 18-12344, 2020 WL 5553312 (11th Cir. 2020) ...................................14, 16, 20

*Los Santos v. Millward Brown, Inc.*,
  No. 13-cv-80670, 2015 WL 11438497 (S.D. Fla. 2015) ...........................................6

*Markos v. Wells Fargo Bank, N.A.*,
  No. 15-cv-01156, 2017 WL 416425 (N.D. Ga. 2017)...............................................8

*Montoya v. PNC Bank, N.A.*,
  No. 14-cv-20474,2016 WL 1529902 (S.D. Fla. 2016) ...........................................17

*O'Toole v. Pitney Bowes, Inc.*,
  No. 08-cv-01645, 2009 WL 10672311 (N.D. Ga. 2009)..........................................13

*Parsons v. Brighthouse Networks, LLC*,
  No. 09-cv-267, 2015 WL 13629647 (N.D. Ala. 2015).............................................19

*Ressler v. Jacobson*,
  822 F. Supp. 1551 (M.D. Fla. 1992).............................................................................7

*Rose et al. v. Bank of America Corp.*,
  No. 11-cv-02390 (N.D. Cal. 2014) ..............................................................................6

*Salcedo v. Hanna,*
    936 F.3d 1162 (11th Cir. 2019) ....................................................................2, 7

*Schwyhart v. AmSher Collection Servs., Inc.,*
    No. 15-cv-01175, 2017 WL 1034201 (N.D. Ala. 2017)....................................8, 13

*Spann v. J.C. Penney Corp.,*
    211 F. Supp. 3d 1244 (C.D. Cal. 2016) ...............................................................22

*Spillman v. RPM Pizza, Inc.,*
    No. 10-cv-349, 2013 WL 2286076 (M.D. La. 2011)..............................................5

*Waters v. International Precious Metals Corp.,*
    190 F.3d 1291 (11th Cir. 1999) ...........................................................................17

*Williams v. Bluestem Brands, Inc.,*
    No. 17-cv-1971, 2019 WL 1450090 (M.D. Fla. 2019).......................................1, 6

## Statutes

47 U.S.C. § 227.................................................................................................... *passim*

FED. R. CIV. P. 23 ................................................................................................. *passim*

## Other Sources

Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 13.22 (5th ed.) ......................23

I.      **INTRODUCTION**

Plaintiffs respectfully request that this Court grant final approval of the Parties' Settlement Agreement.[1] This settlement is, by any measure, an excellent result for the Class, making up to $35 million available for settlement of Approved Claims and Settlement Costs for over 1.2 million Settlement Class Members. The settlement offers each Settlement Class Member their choice of either $35 *cash* or a $150 Voucher Award—settlement benefits that are well within the range for TCPA class settlements across the country. With over 24,000 claims received, each claimant who chose the Cash Award is projected to receive the full cash payment of $35 and each claimant who chose the Voucher Award will receive the full $150 Voucher Award, an exceptional amount when compared with awards achieved in similar TCPA settlements.[2] The reaction of the Class reflects this superior result: more than 24,000 claims have been filed, and despite over 1.46 million notices being sent to Settlement Class Members, *only 11 opt-outs* were received, and there was just one timely objection.[3]

---

[1] Unless otherwise defined herein, capitalized terms used herein have the same meaning given to them as in the Second Amended Class Action Settlement Agreement ("Settlement Agreement"), attached hereto as Exhibit A.

[2] *See, e.g.*, *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (providing a $34.60 recovery per claiming class member); *Arthur v. Sallie Mae, Inc.*, No. 10-cv-0198, 2012 WL 90101, at *3 (W.D. Wash. Jan. 10, 2012) (approving a settlement where class members were due to receive between $20 and $40); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-MD-02261 (S.D. Cal. 2013) (approving settlement providing class members with $20 vouchers that could be redeemed for $15 cash); *Garcia v. Target Corp.*, No. 16-cv-02574, Dkt. 191 (D. Minn. July 30, 2019) (preliminary approving a settlement creating a $7.05 million fund for unauthorized automated calls providing for a settlement payment of $70 per class member); *Williams v. Bluestem Brands, Inc.*, No. 17-cv-1971, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) (approving TCPA settlement resulting in approximately $25–$75 per claimant).

[3] In addition to the objection filed by the Bandas Law Firm (Dkt. No. 53), on October 21, 2020, Plaintiffs' counsel received a purported objection from Steven Helfand (attached hereto as Exhibit B), a well-known serial objector who has been disbarred by the State of California. As addressed further below in Sections II.E and II.F, Mr. Helfand's "objection" should be stricken, as Mr. Helfand is not a class member and his objection is entirely deficient as it was sent almost *two months* after the objection deadline and fails to provide any of the information required by the Court in its preliminary approval order. *See* Dkt. No. 49, at 8–9; *see also* Declaration of Kari Grabowski, Project Manager for the Settlement Administrator, Epiq, attached hereto as Exhibit C, at ¶ 24.

1

Critically, the settlement must be measured against the real possibility that Settlement Class Members would have received no compensation whatsoever. While Plaintiffs believe they would have secured class certification and prevailed at trial, success was not assured, particularly given the uncertainty surrounding the interpretation of "automatic telephone dialing system" ("ATDS") – the precise issue on appeal to the U.S. Supreme Court in *Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 3865252 (U.S. July 9, 2020) – and the changing status of the law regarding Article III standing for certain TCPA violations. *See Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019).

This Court has already preliminarily found that this settlement is fair, adequate, and reasonable (Dkt. No. 49, at 3)—a finding that is now supported by the overwhelming majority of the Settlement Class. For those reasons, as well as those stated further below, Plaintiffs respectfully request that the Court grant final approval of the settlement so that the thousands of Settlement Class Members who filed claims may receive the settlement benefits to which they are entitled. Plaintiffs also respectfully request that the Court finally approve the award of attorneys' fees, costs, and expenses it preliminarily granted. Dkt. No. 55. Finally, for the reasons stated in Plaintiffs' Response to the Objection of Juan Pinto (Dkt. No. 61), and as further explained below, Plaintiffs request that the Court overrule the objection of Mr. Pinto and strike the objection of Mr. Helfand, as they were brought by serial objectors who failed to cite to any applicable caselaw or provide any factual basis for their objections and ignore the real and significant relief provided by this settlement.

## II.  <u>ARGUMENT</u>

The new Fed. R. Civ. P. 23(e) calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. That step has already occurred. *See* Dkt. No. 49 (granting preliminary approval of the settlement). With this Motion, Plaintiffs

respectfully request that the Court take the second and final step in the process by granting final approval of the settlement. Final approval is warranted because the class Notice was effective and satisfied Rule 23 and due process, and because the settlement is an excellent result for the Settlement Class that was reached through arm's-length, adversarial negotiations following extensive litigation and discovery by Class Counsel.

### A.     The Notice Plan was Effective and Satisfied Rule 23 and Due Process.

When a class is certified through settlement, due process and Rule 23 require that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Notice should be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Class notice must clearly state in plain, easily understood language the details of the proposed settlement, including the nature of the action, the class definition, the claims, and the class members' rights.  Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).

Here, as the Court previously found in granting preliminary approval, the Notice clearly satisfied Rule 23 and due process. Consistent with the preliminary approval order, the Notice Plan was implemented by July 9, 2020. Dkt. No. 49; Grabowski Decl., at ¶¶ 11, 12. The Settlement Administrator sent direct notice of the settlement via email and U.S. mail to the over 1.2 million Settlement Class Members, sending a total of over 1.46 million mailings. Grabowski Decl., at ¶ 16. Additionally, Settlement Class Members had access to the Settlement Website which contains all of the information related to the settlement, including key dates and deadlines, relevant court documents, contact information for Class Counsel, and most importantly, an easily accessible online claim form that Settlement Class Members could use to submit their claim directly on the Settlement Website or by mail. Grabowski Decl., at ¶ 18; *see* www.drazentcpasettlement.com.

As the Court has already found, the form and content of the Notice satisfied Rule 23 and due process. Dkt. No. 49 at 4–7. And notice was effective, reaching over 96% of the potential Settlement Class Members and resulting in more than 24,000 Claim Forms being submitted. Grabowski Decl., at ¶¶ 17, 25.

**B.      Final Approval of the Settlement Is Warranted.**

As the Court already found in its initial decision granting preliminary approval of the settlement, application of the Rule 23(e)(2) factors demonstrate that the settlement should be granted final approval.

1.      <u>The settlement was reached after extensive discovery, litigation, and arm's-length negotiation</u>.

The first two factors under the amended Rule 23(e)(2) are intended to "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) & (B) Advisory Committee's Note. In determining whether these factors are satisfied the Court may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) & (B) Advisory Committee's Note.

The negotiations that led to the settlement followed extended and contentious discovery. The first mediation in this litigation followed the close of discovery and the granting of Plaintiff Bennett's motion for class certification following full briefing. *See Bennett v. GoDaddy.com, LLC*, No. 16-cv-03908, Dkt. 131 (D. Ariz. Mar. 15, 2019). It took another three months of negotiations for the Parties to finalize the Original Agreement, and yet another three months for the Parties to finalize the final Settlement Agreement that the Court ultimately preliminarily approved. In the course of litigating the Actions, Plaintiffs' counsel have collectively reviewed thousands of pages of documents and conducted several depositions of Defendant GoDaddy.com, LLC's

4

("GoDaddy") corporate designees. Class Counsel also worked closely with expert witnesses to analyze in detail the process by which GoDaddy placed the calls and sent the text messages at issue. Indeed, the discovery efforts in this case are evidenced by Class Counsel's significant lodestar previously submitted to this Court in support of their motion for attorneys' fees. *See* Dkt. No. 50, at 18–20. Accordingly, and as the Court already found in reviewing Plaintiffs' Motion for Preliminary Approval, Plaintiffs and Class Counsel had more than sufficient information about the facts of the allegedly unauthorized calls at issue to fairly weigh their prospects of success at trial versus the negotiated outcome provided by the settlement and adequately represent the Class—as further evidenced by the almost complete lack of any disapproval for the settlement from the Settlement Class.

Importantly, the Parties' settlement negotiations were at all times conducted at arm's length and were facilitated by an experienced mediator. *See* Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests").

2.    <u>The settlement provides significant relief to the Settlement Class given the substantial costs, risks, and potential delay of having proceeded to trial instead</u>.

The settlement provides outstanding relief to the Settlement Class Members, especially in light of the numerous significant risks if these cases had proceeded towards ruling on class certification, dispositive motions, and trial. Each of the over 24,000 claimants will be eligible to receive the full $35 Cash Award or $150 Voucher Award as they elected. The settlement benefits provided here are consistent with, if not above, the benefits provided in similar TCPA class action settlements that have been granted final approval across the country. *See, e.g.*, *Spillman v. RPM Pizza, Inc.*, No. 10-cv-349, 2013 WL 2286076, at *4 (M.D. La., June 17, 2011) (approving a TCPA

settlement creating a $9.75 million fund, resulting in a settlement payment of approximately $15 per class member); *Los Santos v. Millward Brown, Inc.*, No. 13-cv-80670, 2015 WL 11438497 (S.D. Fla. Sept. 11, 2015) (approving a TCPA settlement creating an $11 million fund, resulting in a settlement payment of $50 per class member); *Rose et al. v. Bank of America Corp*., No. 11-cv-02390 (N.D. Cal. 2014) (approving TCPA settlement creating a $32 million fund, resulting in a settlement payment of approximately $20–$40 per class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-MD-02261 (S.D. Cal. 2013) (approving settlement providing class members with $20 vouchers that could be redeemed for $15 cash); *Garcia v. Target Corp.*, No. 16-cv-02574, Dkt. 191 (D. Minn. 2019) (preliminary approving a TCPA settlement creating a $7.05 million fund and providing for a settlement payment of $70 per class member); *Williams v. Bluestem Brands, Inc.*, 2019 WL 1450090, at *2 (M.D. Fla. 2019) (approving TCPA settlement resulting in approximately $25–$75 per claimant).

Not only does the settlement provide Settlement Class Members meaningful relief, but the settlement merits final approval *particularly* given the risks Plaintiffs faced in proceeding with litigation. Plaintiffs believe they had a good likelihood of prevailing on their TCPA claims against GoDaddy, but they are also aware that GoDaddy has denied each of their allegations and has raised several legal defenses, any of which, if successful, would have resulted in Plaintiffs and the Settlement Class Members receiving no payment whatsoever. Specifically, GoDaddy has made it clear it was prepared to argue, among other things, that (a) Plaintiffs had not suffered any actual injury, (b) that the communications at issue were not made for a telemarketing purpose, (c) that GoDaddy had valid consent to place the calls and send the text messages at issue, and (d) that no ATDS was used in making the communications at issue. *See, e.g.*, *Herrick v. GoDaddy.com, LLC*, 312 F. Supp. 3d 792, 793 (D. Ariz. 2018). Indeed, just during the pendency of this settlement two

of these issues have become particularly pertinent, with the Eleventh Circuit recently ruling that unauthorized text messages may not always constitute an injury in fact under the TCPA (*see Salcedo*, 936 F.3d 1162), and the U.S. Supreme Court granting certiorari to determine what constitutes an ATDS under the TCPA. *See Facebook*, No. 19-511, 2020 WL 3865252. Absent this settlement, any ruling in the *Facebook* appeal that strictly interprets the definition of ATDS – a very possible outcome – would likely result in the Settlement Class Members receiving no compensation at all. Indeed, had Plaintiffs held out any longer and refused to engage in settlement discussions with GoDaddy, GoDaddy itself would have likely moved for a stay of proceedings pending the *Facebook* appeal, leading to unknown delay and a less-than-certain outcome for the litigation.

This is not to mention that any trials resulting from this litigation were likely to be complex and expensive and unlikely to take place for some time given the procedural posture of the various actions that resulted in the Settlement Agreement being reached. Even in the event that the litigation reached trial, given the complexity of the issues and the amount in controversy – as was already shown by GoDaddy seeking appeal of the class certification ruling in *Bennett v. GoDaddy.com, LLC*, No. 19-80037 (9th Cir.) – the losing Party would likely appeal both any decision(s) on the merits (at summary judgment and/or trial), as well as any decision(s) on class certification. As such, the immediate relief provided to the Settlement Class under the Settlement Agreement weighs heavily in favor of its approval compared to the inherent risk and delay of continued litigation, trial, and appeal in multiple forums. *Ressler v. Jacobson*, 822 F. Supp. 1551, 1552 (M.D. Fla. 1992) ("The law generally favors and encourages the settlement of class actions"); *see also Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960) ("[T]he very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense,

lay behind the Congressional infusion of a power to compromise").

3.    The remaining Rule 23(e)(2)(C) factors weigh in favor of approval.

**Method of distributing relief to the Class**.  As detailed above, the Parties' preliminarily-approved, extensive Notice Plan ensured that Settlement Class Members received effective notice informing them about the settlement and allowing for them to easily submit claims for compensation. *See supra* § II.A; Fed. R. Civ. P. 23(e)(2)(C)(ii).

**Terms of the attorneys' fee award**. For the reasons discussed in Class Counsel's fee petition (Dkt. No. 50), their response to Mr. Bandas' objection (Dkt. No. 61), and this Court's Order preliminary approving an award of attorneys' fees of 25% of the Total Settlement Amount (Dkt. Nos. 51, 55), an attorneys' fee award of 25% of the $35 million Total Settlement Amount made available for settlement of Approved Claims and Settlement Costs falls well within the range of attorneys' fee awards in other similar settlements, and should be finally approved in light of the significant recovery achieved for the Settlement Class and the efforts undertaken by Class Counsel in pursuing these claims on their behalf. Fed. R. Civ. P. 23(e)(2)(C)(iii); *see, e.g., James v. JPMorgan Chase Bank, N.A.*, No. 15-cv-2424, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (awarding attorneys' fees amounting to 30% of the settlement fund where class counsel "litigat[ed] a large class action" brought under the TCPA); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 18-cv-20048, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) (collecting authorities and noting "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund"); *Schwyhart v. AmSher Collection Servs., Inc.*, No. 15-cv-01175, 2017 WL 1034201, at *3 (N.D. Ala. Mar. 16, 2017) (finding award of attorneys' fees of "one-third of the Settlement Fund" to be "fair and reasonable" in TCPA class action); *Markos v. Wells Fargo Bank, N.A.*, No. 15-cv-01156, 2017 WL 416425, at *3 (N.D. Ga. Jan. 30, 2017) (awarding $4.9 million, or 30% of settlement fund in TCPA class action). Critically, not only is Class Counsel's attorneys'

fees award well-supported by their efforts and the standard for awarding attorneys' fees in similar class actions that provide a large common benefit, but it is also overwhelmingly supported by the Settlement Class itself, given that only 11 Settlement Class Members chose to opt out of the settlement, and the only two objectors were prolific serial objectors who failed to raise any valid arguments.

**Any agreement required to be identified under Rule 23(e)(3)**. There are no agreements other than the Settlement Agreement subject to Rule 23(e)(3).

**Equitable treatment**. Because each Settlement Class Member is entitled to receive the same $35 Cash Award or $150 Voucher Award per their own election, the settlement indisputably "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

### C.     The Court Should Grant Final Certification of the Settlement Class.

As explained in the Motion for Preliminary Approval (Dkt. No. 20, at 18–25), and as the Court already found in its order granting preliminary approval (Dkt. No. 49, at 1), the Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(3). Nothing material has changed, and no objections to class certification have been filed. Accordingly, for the reasons previously found by this Court and briefly summarized below, the Court should conclude that the Settlement Class meets both the requirements under Rule 23(a) and Rule 23(b)(3) and finally certify the Settlement Class.

1.     <u>The Settlement Class meets all prerequisites to certification under Federal Rule 23(a).</u>

i.     *The Settlement Class is ascertainable based on objective criteria.*

As proven by the Settlement Administrator's notice campaign, the Settlement Class Members are readily ascertainable using the Cellular Number List and Contact Information Records maintained by GoDaddy. Ex. A, ¶¶ 20, 27. Indeed, using these records, the Settlement

Administrator was able to identify each individual associated with a cellular telephone number that received calls or a text message from GoDaddy, and send them direct notice of the settlement. Grabowski Decl., at ¶¶ 6–17.

Because membership in the Settlement Class was easily determined based on objective criteria and records that have already been produced and are readily accessible, the Settlement Class is ascertainable. *See Family Med. Pharmacy, LLC v. Trxade Grp., Inc.*, No. 15-cv-0590, 2017 WL 1042079, at *4 (S.D. Ala. Mar. 17, 2017) (granting final approval and finding that the proposed class was ascertainable where the defendant provided a list of phone numbers that received the unauthorized messages at issue and accompanying contact information).

ii.    *Numerosity.*

As shown by the Settlement Administrator's records, direct notice was sent to over 1.2 million Settlement Class Members. Grabowski Decl., at ¶¶ 7, 17. The Settlement Class is therefore sufficiently numerous. *See Family Med. Pharmacy, LLC v. Trxade Grp., Inc.*, No. 15-cv-0590, 2016 WL 6573981, at *4 (S.D. Ala. 2016) (finding that a class of 8,500 persons was sufficient to satisfy numerosity).

iii.    *Commonality.*

The Settlement Class Members share a common statutory TCPA claim arising out of the same standardized conduct: they allegedly received calls or text messaging that constitute telemarketing on their cellular telephones from GoDaddy, and they allegedly did not consent to receive such calls or text messaging. Had this litigation gone to trial, prevailing on their claims would have required Plaintiffs and the other Settlement Class Members to resolve the same central factual and legal issues, including: whether the Settlement Class Members received calls or a text message on their cellular telephones; whether such calls and text messages were made using an ATDS; whether Settlement Class Members consented to receiving the calls or the text messaging;

10

and, whether such conduct violated the TCPA. In addition, the calls and the text messages at issue were allegedly made to the Settlement Class Members in the same manner and for promotional purposes, which would entitle the Settlement Class Members to identical statutory damages under the TCPA. Therefore, the sheer number and significance of the common questions that exist for the Settlement Class Members are sufficient to meet the commonality requirement.

iv.    *Typicality.*

The typicality prong of subsection 23(a)(3) requires that the class representatives' claims be typical of the class members' claims. Fed. R. Civ. P. 23(a)(3). Plaintiffs allege that they received unauthorized telemarketing in the form of calls and text messaging from GoDaddy that they did not consent to receive. These are the same allegations that form the basis of the Settlement Class Members' claims. Further, Plaintiffs and the Settlement Class Members have all suffered the same alleged injury – a violation of their rights under the TCPA – and are entitled to identical statutory damages under the TCPA. Because the Settlement Class Members assert identical claims that are based on the same legal theory, the same facts, and the same course of conduct by GoDaddy, and seek redress for the same injury, Plaintiffs are typical of the Settlement Class Members they represent.

v.    *Adequacy.*

Here, Plaintiffs' interests are representative of and consistent with the interests of the Settlement Class Members—all have received allegedly unlawful calls or text messaging from GoDaddy and all seek relief under the TCPA. Plaintiffs' pursuit of this matter, including producing documents and participating in the discovery process, as well as representing the Settlement Class Members' interests throughout the lengthy and extensive settlement process, demonstrate that they

have been zealous advocates for the Settlement Class. Nor have the Plaintiffs shown any interests antagonistic to those of the Settlement Class Members.[4]

Further, Plaintiffs are also represented by experienced, competent counsel. Class Counsel have regularly engaged in complex class litigation and have extensive experience in consumer class action lawsuits involving cellular telephones and, in particular, the TCPA. Plaintiffs' counsel and their firms have been appointed as class counsel in numerous complex consumer class actions, including numerous TCPA cases such as the one before the Court here. *See, e.g., Vergara et. al. v. Uber Technologies, Inc.* (N.D. Ill.); *Kovach et al v. Compass Bank* (Cir. Ct. Jefferson County, AL 2018); *Quekemeyer v. EFinancial LLC*, Case No. 14-cv-00118 (S.D. Ala., 2014); *In Re. Monitronics International, Inc., Telephone Consumer Protection Act Litigation*, Case No. 13-md-02493 (N.D. West Virginia, 2013); *Palm Beach v. Sarris*, No. 12-cv-80178 (S.D. Fla. May 31, 2016). As such, Class Counsel were qualified to assess the fairness and reasonableness of the settlement reached in this case and weigh the proposed relief against the potential risk of proceeding with the litigation towards trial.

2.    The Settlement Class Is Certifiable Under Federal Rule 23(b)(3).

i.    *Common questions predominate within the Settlement Class.*

In TCPA cases, the predominance requirement is generally met where, as here, the class members' claims focus on a specific calling operation by a particular defendant. *See, e.g., Gonzalez*, 2019 WL 2249941, at *2 (granting final approval of TCPA class action settlement and finding predominance satisfied where individuals received "one or more text messages sent by or

---

[4] As explained further below in Section II.D.5, contrary to Bandas' attempts to argue otherwise (Bandas' brief re: *Johnson*, Dkt. No. 68, at 5–6), the fact that Plaintiffs *petitioned* this Court for incentive awards – which every class representative in every class action in the country has done for decades – does not in any way implicate their adequacy given that Plaintiffs were never promised an incentive award or any compensation of any kind for their participation.

on behalf of Defendant . . . on a cellular phone"); *Schwyhart*, 2017 WL 1034201, at *1; *O'Toole v. Pitney Bowes, Inc.*, No. 08-cv-01645, 2009 WL 10672311, at *1 (N.D. Ga. Aug. 3, 2009); *CMart, Inc. v. Metro. Life Ins. Co.,* 299 F.R.D. 679, 691 (S.D. Fla. 2014) (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 f.3d 999, 1005 (11th Cir. 1997).

In this case, as in those cited above, common questions predominate because all Settlement Class Members allege that they received the same type of calls and text messages from GoDaddy, and that they did not consent to receive such calls and messages. As such, the elements of any given Settlement Class Member's claim will be based on the same class-wide proof applicable to the other Settlement Class Members. Further, as to the dialing system used by GoDaddy to place the calls and text messages at issue, testimony of GoDaddy's corporate representatives has made it clear that GoDaddy utilized the same allegedly automated system to send its text message marketing, and similarly used the same dialing systems to place all of the alleged telemarketing calls at issue. Accordingly, whether all of the calls and text messages received by the Settlement Class Members were placed using an ATDS is subject to common proof that predominates over any individual issues. Accordingly, common questions will predominate over any potential individualized issues.

    ii.  *A class action is superior to any alternative means of adjudicating Settlement Class Members' claims.*

Finally, a class action is also superior to any other method available to fairly and efficiently adjudicate the Settlement Class Members' claims. Here, because all of the Settlement Class Members' claims involve the same course of conduct by GoDaddy, and are subject to resolution based on the determination of the same common legal and factual issues, it would be most efficient for their claims to be adjudicated on a class basis. Nor is there any concern regarding the "difficulties in managing a class action," since "[t]he proposed settlement negates any potential

problems for managing a class action." *Family Med. Pharmacy*, 2016 WL 6573981, at *7 (citing *Amchem*, 521 U.S. at 620) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[]").

Importantly, it is unlikely that, absent a class action, many individuals would be able to obtain relief through individual lawsuits given the efforts needed to pursue a TCPA claim and the significant risk in the current legal environment for TCPA claims. *See CMart*, 299 F.R.D. at 691 ("the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating the plaintiffs' claims under TCPA"). As such, settlement of this litigation through a class-wide resolution that allows Settlement Class Members to receive meaningful compensation is superior to any alternative means of resolving their claims.

### D.    The Court Should Overrule Bandas' Objection.

Plaintiffs have already addressed Bandas' Objection and the myriad of reasons why it should be overruled in their Response brief. *See* Dkt. No. 61. Nonetheless, Bandas chose to file a reply brief, seeking to rehabilitate his arguments and his status as a serial objector. *See* Dkt. No. 63-1. Bandas also attempted to challenge the settlement based on an unfounded extension of the decision in *Johnson v. NPAS Solutions, LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020). *See* Dkt. No. 68. However, nothing advanced by Bandas addresses the core deficiencies with his Objection and the lack of any relevant Eleventh Circuit caselaw supporting his arguments.

1.   <u>Bandas cannot separate themselves from their prolific history as a serial objector.</u>

While Bandas summarily dismisses its long and storied history of questionable objections as a "tired litany of allegations" (Dkt. No. 63-1, at 2), and posits that Mr. Christopher Bandas *himself* has not made an appearance in the case (*id.*), the fact of the matter is that the objection was brought by one of the most – if not *the most* – prolific objectors in class action litigation, Bandas Law Firm, P.C. While Mr. Bandas himself might not be making an appearance, Mr. Clore is still an employee of Bandas Law Firm, P.C. Indeed, while Mr. Clore is correct that Plaintiffs' reference to the objection in *In re Optical Disk Drive Prod. Antitrust Litig.*, 804 F. App'x 445 (9th Cir. 2020) was in error,[5] he does not, and indeed cannot, distance himself from the numerous other rulings cited to by Plaintiffs that implicate his firm in a number of failed objections, including recently in *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-md-2800, 2020 WL 256132, at *41 (N.D. Ga. Mar. 17, 2020).

Bandas' prolific history as a serial objector is not "irrelevant and distracting"; rather, as explained in Plaintiffs' Response to Bandas' Objection, Bandas' history of specious objections is presented to the Court so that it may view Bandas' Objection in the proper context and with an understanding of the ultimate end goal sought and how it differs from an objection brought by a regular class member who is actually concerned with the outcome of a proposed settlement and the relief they are entitled to claim. This is why it is beyond telling that Bandas' main concern with this settlement is the amount of attorneys' fees being awarded and not the amount of relief being offered to the Settlement Class Members.

---

[5] In an effort to ensure that Plaintiffs were not simply presenting a "tired litany" of past rulings striking Bandas' objections, Plaintiffs conducted a search to find more recent rulings evaluating Bandas' objections. The ruling in *In re Optical Disk Drive Prod. Antitrust Litig.*, 804 F. App'x 445 (9th Cir. 2020), listed Bandas as the sole attorneys for "Objector-Appellant" without specifying that they were attorneys for only one of the "Objector-Appellant['s]" in the appeal.

2.      Bandas fails to provide any evidence that any Settlement Class Members were deprived of their due process rights.

Bandas baldly claims that "Class members who saw that the fee was approved weeks before the objection deadline would have thrown up their arms rather than voice a pointless after-the-fact objection." Dkt. No. 63-1, at 4. However, Bandas provides absolutely no support of any kind for the pure conjecture that *any* other Settlement Class Members would have filed an objection had it not been for the Court's initial approval of Class Counsel's attorneys' fees. Nor does Bandas address Plaintiffs' discussion of *Johnson v. NPAS Sols., LLC*, 2020 WL 5553312 (11th Cir. 2020), and the fact that the Eleventh Circuit in *Johnson* held that where the class notice, as here, clearly informed settlement class members about the amount of attorneys' fees that would be sought, there are no due process violations. 2020 WL 5553312, at *7 n.7. Rather than providing *any* factual or legal support for his arguments, Bandas attempts to misdirect and instead argue that the claims rate in this case is somehow indicative of the fact that Settlement Class Members did not approve of the settlement and wished to object. However, here again, Bandas fails to provide any factual or legal support for his position.

Ultimately, as the Eleventh Circuit in *Johnson* held, Bandas cannot credibly claim that there was any prejudice as a result of the Court's initial order awarding Class Counsel's attorneys' fees since Bandas was clearly able to assert his objection and the alleged harm failed to "materialize." 2020 WL 555312, at *6. Bandas' arguments to the contrary, much like the bulk of his arguments in objection to the settlement, are not founded in law or fact.

3.      Bandas does not offer any additional support for why the Court should apply CAFA.

In typical objector fashion, Bandas attempts to attack the attorneys' fees sought by Class Counsel by arguing that CAFA somehow applies to the settlement. However, as discussed in

Plaintiffs' response to Bandas' objection, CAFA is entirely inapplicable here, as the settlement makes up to $35 million available for settlement of Approved Claims and Settlement Costs, and from which the Settlement Class Members can claim a $35 *Cash Award*. Bandas' reply fails to address Plaintiffs' arguments, simply reiterating that the settlement made more funds available than was ultimately claimed by the Settlement Class. Dkt. No. 63-1, at 5. However, as this Court already found in its order preliminarily awarding Class Counsel attorneys' fees, Eleventh Circuit law is clear that "common-fund fee awards are properly calculated as a percentage of benefits made available to the class, regardless of whether each class member redeems the benefits made available[.]" Dkt. No. 51, at 4 (citing *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1294–95 (11th Cir. 1999)); *see also Montoya v. PNC Bank, N.A.*, No. 14-cv-20474,2016 WL 1529902, at *23 (S.D. Fla. Apr. 14, 2016) ("the valuation of counsel's fee should be based on the opportunity created for the Settlement Class . . . [a]nd counsel should not be penalized for class members' failure to take advantage of such a settlement").

Nor does Bandas present any additional support for his conclusion that "this is a coupon settlement since most class members took the $150 vouchers instead of $35 cash." Dkt. No. 63-1, at 5. The fact of the matter is that, as argued in Plaintiffs' response to Bandas' objection, the almost completely even split between the number of Settlement Class Members choosing the Cash Award and the Voucher Award is actually evidence that the Voucher Award is not being viewed as a mere "coupon" by the Settlement Class Members and has sufficient value comparable to cash. Indeed, if Settlement Class Members had overwhelmingly chosen the Cash Award, Bandas would have likely pivoted to arguing that as evidence that the Voucher Award is a worthless coupon, and if Settlement Class Members would have overwhelming chosen the Voucher Award he would have doubled-down on his arguments that this is a coupon settlement under CAFA.

Most telling, however, and completely unaddressed by Bandas, is that if Plaintiffs had simply negotiated for a $35 Cash Award and left Settlement Class Members with no option to claim a $150 Voucher Award, Bandas would not have been able to raise any of these arguments, even though the Settlement Class Members who actually chose the Voucher Award would have been worse off. Bandas fails to provide any explanation for why Class Counsel should be penalized for providing an alternative form of relief that a significant amount of Settlement Class Members clearly found as valuable as the cash benefit. The settlement provides Settlement Class Members with a choice between two valuable options, and the nearly equal split between Cash Awards and Voucher Awards demonstrates that Settlement Class Members appreciated the choice and believed both options had significant value.

Nor does Bandas provide any factual or legal support for his assertion that CAFA somehow "overrides" Eleventh Circuit authority because "the primary settlement benefit" is the Voucher Awards. The settlement makes up to $35 million available for settlement of Approved Claims and Settlement Costs, including any $35 *Cash Awards* claimed by any of the approximately 1.2 million Settlement Class Members; how offering an alternative of a $150 Voucher Award somehow makes it the "primary settlement benefit" is entirely unexplained. Regardless, as Bandas admits, there is no Eleventh Circuit case law – at the district court level or otherwise – that supports his position and would require this Court to revisit its prior ruling preliminarily awarding Class Counsel attorneys' fees.

Finally, Bandas also fails to address Plaintiffs' discussion of the rulings that he cites to for support of his argument that excess attorneys' fees should be re-distributed to the Settlement Class. *See* Dkt. No. 61, at 23–24. Neither in *In re Easysaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018), nor in *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013), did the courts rule that the

attorneys' fees had to be redistributed to the class. Further, such an attempted re-distribution of attorneys' fees to the Settlement Class would violate the terms of the Settlement Agreement, thereby sending the Parties back to litigation—the outcome of which is very uncertain and which could result in 24,000 Settlement Class members who filed claims ultimately receiving nothing whatsoever. Once again, Bandas' overwhelming targeting of the attorneys' fees sought by Class Counsel rather than any substantive challenge to the settlement itself or the amount of relief made available, combined with the lack of any relevant *Eleventh Circuit* authority, are beyond informative of his actual goal in filing this objection.

4.   Class Counsel submitted sufficient records for determining the applicable lodestar.

As this Court has already ruled, where a settlement provides a common cash benefit to the settlement class the "11th Circuit does not require that a lodestar cross-check be done in determining common benefit fee awards." Dkt. No. 51, at 2 n.2. In fact, conducting the type of intensive lodestar cross-check that Bandas seems intent on is exactly the sort of "time-consuming exercise" that courts throughout the Eleventh Circuit have found unnecessary. Dkt. No. 51, at 2 n.2 (citing *In re: Home Depot, Inc.*, 931 F.3d 1065, 1091 n.25 (11th Cir. 2019)). And even when courts in the Eleventh Circuit do choose to look at the lodestar as evidence for the reasonableness of a fee request, they conduct a review of the total time expended without any detailed analysis of every time record entered. *See, e.g., Deas v. Russell Stover Candies, Inc.*, No. 04-cv-0491, 2005 WL 8158201 (N.D. Ala. Dec. 22, 2005); *Parsons v. Brighthouse Networks, LLC*, No. 09-cv-267, 2015 WL 13629647, at *15 (N.D. Ala. 2015). Nor can Bandas attempt to distinguish the district court's review of the attorney time records in *Blessing v. Sirius XM Radio Inc.*, No. 09-cv-10035, 2011 WL 3739024, at *4 (S.D.N.Y. Aug. 24, 2011), aff'd, 507 F. App'x 1 (2d Cir. 2012). While the district court in *Blessing* did note that the attorneys' fees in that case were paid for separately

from the settlement amount, the court nonetheless explained that it "reviewed the attorney expense sheets" and found that "the settlement is reasonable under both the lodestar and percentage method of calculation[.]" *Blessing*, 2011 WL 3739024, at *4. In short, Class Counsel were not under any obligation to submit *any* lodestar records. However, given the significant efforts expended by Class Counsel in litigating this action, they produced sufficient records to show – as the Court has already preliminarily concluded – the reasonableness of their attorneys' fee award.

> 5.   There is no good faith argument for disqualifying the appointed class representatives on the basis of *Johnson v. NPAS Solutions, LLC*.

Bandas can hardly cry foul over the *factual* recitations of his prolific history as a serial objector given his blatantly unfounded attempts to undercut the Class Representatives' credibility on the basis of the Eleventh Circuit's decision in *Johnson v. NPAS Solutions*. *See* Dkt. No. 68. The request for incentive awards from the Court was filed prior to the issuance of the *Johnson* decision. Upon review of the decision, Plaintiffs conceded that, under *Johnson*, the Court must currently forego awarding the incentive awards that it preliminarily approved. *See* Dkt. No. 66. However, there is absolutely no support under *Johnson* for the argument that "Class Counsel have induced the named representatives to acquiesce to a paltry settlement[.]" Dkt. No. 68, at 5. In fact, Class Counsel have provided sworn declarations to the contrary that the Class Representatives "contributed their own time and expended efforts toward this litigation *without any promise of compensation*." *See* Dkt. No. 50-2, at ¶ 22 (emphasis added); Dkt. No. 50-3, at ¶ 20; Dkt. No. 50-5, at ¶ 21. Bandas ignores this Court's findings in its order preliminarily approving the settlement and the incentive awards sought, as well as the overwhelmingly positive response from the Settlement Class Members, when he argues without *any* factual or legal support that the Class Representatives are "inadequate" and should be substituted. Dkt. No. 68, at 6. There is little question that Bandas is positioning himself to conveniently parade Mr. Pinto as a perfect

replacement for the Class Representatives, while ignoring the fact that it was the Class Representatives who have devoted significant time and effort to this litigation, including sitting for depositions, and who lent their name on numerous public documents without any promise of compensation—an outcome that has in fact now been borne out in light of *Johnson*.

In short, Bandas cannot credibly argue that the Class Representatives sold out the Settlement Class Members for their own benefit when they were instrumental to obtaining a significant settlement that made up to $35 million available for settlement of Approved Claims and Settlement Costs for to over a million Settlement Class Members who would otherwise likely have received nothing in light of the significant and real risks posed by proceeding with this litigation. *Again, most telling as to Bandas' real motivations in raising these arguments is the fact that at no point has Bandas voiced any discontent with the actual settlement benefits being made available*, and has only sought to attack Class Counsel's attorneys' fees award and now the Class Representatives themselves. Nor is there a long line of Settlement Class Members who are upset with the "paltry settlement," with only *eleven* choosing to opt out despite notice being sent to over 1.2 *million* Settlement Class Members.

### E.     The Court should strike the "objection" of Steven Helfand.

As previously noted, Bandas is not the only serial objector who turned their attention to this settlement. On October 21, 2020, Mr. Steven Helfand sent his "Objection" to Class Counsel via email. *See* Ex. B. Mr. Helfand is also a well-known serial objector who has been reprimanded by numerous courts for his conduct. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *42 ("Steven Helfand has a history of improper conduct in class action litigation. In 2018, he was accused by the State Bar of California of, among other things, filing an objection in the name of a class member without being authorized . . . misappropriating the

settlement proceeds, and other acts of moral turpitude"); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1260 n.11 (C.D. Cal. 2016) (noting that Mr. Helfand is "another known serial objector" and "courts across the country . . . have repeatedly turned aside their efforts to upend settlements"). Mr. Helfand's conduct in serving the "objection" he sent to Class Counsel here is consistent with this pattern of conduct and his objection should be stricken.

To begin with, Mr. Helfand sent his objection to Class Counsel more than two months *after* the August 31, 2020 objection deadline. Dkt. No. 49, at 8; *see Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 475 (S.D. Fla. 2002) (collecting authorities and noting that objectors who filed their objections months after the objection deadline were "barred from being heard due to their violation of the Court's objection filing deadline"). Nor does Mr. Helfand provide any reasonable explanation for why his objection was sent to Class Counsel past the objection deadline other than stating that he "could not possibly respond on any timely basis in light of COVID." Ex. B at ¶ 9. While Plaintiffs are certainly sympathetic to any COVID-related problems or concerns, how COVID prevented Mr. Helfand from taking the steps necessary to file his objection for *two months* is left unexplained. Further, Mr. Helfand's objection fails to comply with almost every requirement that this Court stated in its preliminary approval order including: (1) it was never "file[d] . . . with the Court"; (2) it does not provide a "signed statement . . . that [he] received one or more phone calls or text messages from GoDaddy between November 4, 2014 and December 31, 2016"; and (3) it does not provide his "current address, telephone number, and GoDaddy account number." Indeed, Mr. Helfand fails to provide *any* evidence that he is in fact a class member. This is not too surprising given that, most importantly, Mr. Helfand is in fact *not* a class member as his name does not appear in the Contact Information Records provided by GoDaddy to the Settlement Administrator. *See* Grabowski Decl., at ¶ 24. Given that Mr. Helfand

has failed to establish that he has standing to raise any objection to the settlement, that alone would require striking his objection. *See Braynen v. Nationstar Mortg., LLC*, No. 14-cv-20726, 2015 WL 6872519, at *11 (S.D. Fla. Nov. 9, 2015) (finding that "Only a 'class member' may object to a proposed class settlement" and that the "burden [is] squarely on [the objector] to prove – not the Parties to disprove – his Class membership"); Newberg on Class Actions § 13:22 (5th ed.) ("Courts regularly find that nonclass members have no standing to object to a proposed settlement").

### F.  Mr. Helfand's "objection" fails to raise any valid arguments.

Although the Court's inquiry should stop at the fact that Mr. Helfand is not a class member who does not have standing to assert his objection, the few arguments that Mr. Helfand attempts to raise can also be easily addressed. To begin with, the first five arguments raised are unsupported by any factual or legal analysis and have largely been addressed by the Court in its orders preliminarily approving the settlement and Class Counsel's attorneys' fees, as well as in Plaintiffs' response to Bandas' objection. Mr. Helfand's sixth, seventh, and eighth arguments are largely a condensed version of Mr. Bandas' brief regarding the Eleventh Circuit's decision in *Johnson*. As with Bandas' argument, Mr. Helfand engages in pure conjecture when he argues that Class Counsel sought the incentive awards because they were "obligated" and that "[i]t is obvious . . . . the named representatives were . . . promised money." Ex. B, at 1–2. As previously stated, the Class Representatives were not promised *any* compensation of any sort.

Finally, his ninth argument simply repeats his first five arguments. Again, Mr. Helfand fails to explain how the notice is "unclear" as to the scope of the class. The notice sent to the Settlement Class Members plainly states in capital letters at the very top center that "IF YOU RECEIVED A TEXT MESSAGE OR PHONE CALL FROM GODADDY BETWEEN NOVEMBER 4, 2014, AND DECEMBER 31, 2016 . . . YOU MAY BE ELIGIBLE TO RECEIVE

23

A MERCHANDISE CREDIT OR PAYMENT FROM A CLASS ACTION SETTLEMENT." Grabowski Decl., at Ex. A. Nor does Helfand explain how COVID requires all deadlines to be vacated, especially given that the Southern District of Alabama has not closed its courts in any fashion in light of COVID and the final approval hearing is set to proceed as scheduled.

For these reasons, and to the extent that the Court does not strike Mr. Helfand's objection for lack of standing, Plaintiffs respectfully request that the Court overrule Mr. Helfand's objection.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, and those stated in Plaintiffs' Response to Objection of Juan Pinto (Dkt. No. 61), Plaintiffs respectfully request that the Court enter an Order: (1) finding that the Settlement is fair, reasonable, and adequate; (2) granting final approval of the Settlement; (3) finally approving its preliminary award of attorneys' fees, costs, and expenses (Dkt. Nos. 51, 55); (4) overruling the objection of Juan Pinto; (5) striking the objection of Steven Helfand for lack of standing and/or overruling the objection of Steven Helfand; and (6) granting such further and additional relief as the Court deems appropriate.

Dated: November 3, 2020                          Respectfully submitted,

_/s/ Eugene Y. Turin_____
EUGENE Y. TURIN

*Attorneys for Plaintiffs and Class Counsel*

UNDERWOOD & RIEMER, P.C.
Earl P. Underwood, Jr.
21 South Section Street
Fairhope, AL 36532
Tel: (251) 990-5558
Fax: (251) 990-0626
epu@urlaw.onmicrosoft.com

MCGUIRE LAW, P.C.
Myles McGuire
Evan M. Meyers (admitted *pro hac vice*)
Eugene Y. Turin (admitted *pro hac vice*)
55 West Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

JRC LEGAL
John R. Cox
30941 Mill Lane, Suite G-334
Spanish Fort, AL 36527
Tel: (251) 517-4753
john@jrclegal.net

BOCK, HATCH, LEWIS & OPPENHEIM, LLC
Robert M. Hatch (*pro hac vice*)
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Tel: (312) 658-5500
service@classlawyers.com

KENT LAW OFFICES
Trinette G. Kent
3219 Camelback Rd., Ste. 588
Phoenix, AZ 85018
Tel: (480) 247-9644
tkent@kentlawpc.com

MARK K. WASVARY, P.C.
Mark K. Wasvary
2401 West Big Beaver Road, Suite 100
Troy, MI 48084
Tel: (248) 649-5667
mark@wasvarylaw.com

MCMORROW LAW, P.C.
Michael J. McMorrow
118 North Clinton St., Suite 108
Chicago, IL 60661
Tel: (312) 265-0708
mike@mjmcmorrow.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2020, I electronically filed the foregoing *Plaintiffs'*

*Motion and Memorandum in Support of Final Approval of Class Action Settlement* with the Clerk

of the Court using the CM/ECF system. A copy of said document will be electronically transmitted

to all counsel of record.

/s/ Eugene Y. Turin
Eugene Y. Turin, Esq.
