**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **SUSAN DRAZEN, on behalf of herself and other persons similarly situated,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 1:19-cv-00563-KD-B** |
| **GODADDY.COM, LLC, a Delaware Limited Liability Company,** | ) ) | **Hon. Kristi K. DuBose** |
| **Defendant.** | ) ) ) | |
| **JASON BENNETT, on behalf of himself and other persons similarly situated,** | ) ) ) | **Case No. 1:20-cv-00094-KD-B** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | |
| **GODADDY.COM, LLC, a Delaware Limited Liability Company,** | ) ) ) | |
| **Defendant.** | ) ) | |

## PLAINTIFFS' MOTION FOR APPEAL BOND

Dated:  January 3, 2021

JRC LEGAL
John R. Cox
30941 Mill Lane, Suite G-334
Spanish Fort, AL 36527
Tel: (251) 517-4753
john@jrclegal.net

[additional counsel listed on signature page]

*Counsel for Plaintiffs and Class Counsel*

Plaintiffs request entry of an order requiring the posting of an appeal bond under Federal Rules of Appellate Procedure 7 and 8 by Objector Pinto and the law firms and attorneys (individually) representing him, jointly and severally (hereinafter collectively referred to as "Bandas"). As explained in further detail below, and as the Court has already found in its Final Judgment and Order Approving Class Settlement (Dkt. No. 74) ("Final Approval Order"), the arguments raised in Bandas' objection that form the basis of the appeal lack merit and fail to advance any of the Settlement Class Members' – and indeed even Mr. Pinto's – interests such that a substantial appeal bond should be imposed on Bandas as a prerequisite for pursuing his appeal which stands to delay Settlement Class Members from receiving the compensation that they are entitled to pursuant to the Settlement Agreement reached by the Parties and pursuant to the Final Approval Order.

## I.    <u>INTRODUCTION</u>

Susan Drazen ("Drazen"), Jason Bennett ("Bennett"), and John Herrick ("Herrick") (collectively "Plaintiffs"),[1] working with Class Counsel, achieved an excellent result for the Settlement Class, making up to *Thirty-Five Million Dollars* ($35,000,000.00) available for settlement of Approved Claims and Settlement Costs, and allowing over 1.26 *million* Settlement Class Members to receive either a Voucher Award worth One Hundred Fifty Dollars ($150.00), or a Thirty Five Dollar ($35.00) Cash Award. (Ex. A, ¶¶ 19, 47, 48, 50.) With 23,771 approved claims received, each claimant who chose the Cash Award will – upon denial of Bandas' appeal – receive the full cash payment of $35 and each claimant who chose the Voucher Award will receive the full $150 Voucher Award. The reaction of the Class reflects this superior result: thousands of claims were filed, and despite over one million Settlement Class Members receiving direct notice,

---

[1] Unless otherwise stated, capitalized terms have the same meaning as those terms are used in the Second Amended Class Action Settlement Agreement (the "Agreement"), Dkt. No. 45-1.

there was just one timely objection that now threatens to delay Settlement Class Members from receiving their compensation for an indefinite amount of time.

Following a careful review of all of the filings related to the Settlement, including the Motion for Final Approval of Class Action Settlement and Memorandum in Support (Dkt. No. 69), supporting exhibits (Dkt. Nos. 69-1, 69-2, 69-3), Plaintiff's Motion for Attorney's Fees, Costs, Expenses, and Service Awards (Dkt. No. 50), Objector Juan Pinto's Objection to Settlement and Amount of Attorneys' Fees (Dkt. No. 53), Plaintiff's Response to Pinto's Objection (Dkt. No. 61), and Pinto's Reply Brief (Dkt. No. 63), on December 14, 2020 the Court held a Final Approval Hearing, at which all Parties and Bandas were given the opportunity to appear and be heard by the Court.  After full consideration of the filings and arguments at the Final Approval Hearing, on December 23, 2020 the Court entered its Final Approval Order and overruled Bandas' objection in its entirety.

The Court's December 23, 2020 Order should have put an end to this litigation, allowing the Parties to expeditiously distribute the benefits of the Settlement to thousands of Settlement Class Members. The delivery of these benefits, to no one's surprise, has now been delayed by Bandas' appeal for months, if not years. Critically, absent this Court's imposition of an appeal bond, Bandas will be allowed to cause significant delay and loss to the Settlement Class without assuming any meaningful financial risk and without any reasonable possibility of success on the merits of his appeal.

Appeal bonds are regularly imposed in similar circumstances where a significant class action settlement is stalled due to an objector's attempted appeal, and a bond would be especially appropriate here given that Bandas' appeal lacks any factual or legal merit. As stated in the Civil Appeals Statement filed by Bandas, the basis of Bandas' appeal is whether, "[i]n the 11th Circuit,

. . . . CAFA (28 U.S.C. §1712) appl[ies] to class action settlements in which coupons are the primary relief." *Pinto v. Drazen et al.*, No. 21-10199 (11th Cir. Feb. 1, 2021) (attached hereto as Exhibit A).  Bandas' appeal thus does not challenge the reasonableness of the Settlement itself, but rather seeks *solely* to limit the attorneys' fees award by petitioning the Eleventh Circuit to find that this was a "coupon" settlement under CAFA. Accordingly, Bandas' likelihood of success on appeal is extremely remote given that (1) it is based on a mischaracterization of the nature of the relief provided by the Settlement, (2) it relies on entirely out-of-circuit law*,* and (3) Bandas would have to show that this Court's well-reasoned opinion awarding lower-than-requested attorneys' fees was an abuse of discretion. Critically, given the limited nature of Bandas' appeal, it also cannot yield *any* benefit to the Settlement Class. That is, even if Bandas is successful in his argument before the Eleventh Circuit regarding the nature of the relief provided and manages to convince the Eleventh Circuit to overturn well-established precedent by applying CAFA, the Settlement itself, and the relief it provides, will remain intact and Settlement Class Members will still receive their elected benefit (their choice of either $35 cash or a $150 Voucher). Bandas' appeal is therefore antagonistic to the interests of the Settlement Class Members – and to Mr. Pinto's own interests[2] – because it will cause significant delay of the distribution of material and specifically requested benefits without the possibility of yielding any additional benefit to the Settlement Class. In short, given Bandas' prolific history as a serial objector, and the lack of *any* potential benefits to the Settlement Class Members, it is clear that Bandas' sole intention in proceeding with an appeal is to hold any distribution of Settlement benefits hostage for purposes of attempting to extract some kind of compensation for their efforts.

---

[2] This, of course, assumes that Mr. Pinto's interest is to receive the best result for himself from the Settlement, as opposed to receiving a bounty for participating in this objection.

Good cause exists for the Court to require Bandas to post a substantial appeal bond of at least One Hundred Twenty-Five Thousand Dollars ($125,000.00). Requiring the deposit of such funds will provide the protections typically afforded appellees during the pendency of an appeal – particularly an appeal of questionable merit – and will also discourage Bandas from viewing this settlement as another objector blackmail scheme. That is, if Bandas truly believes that their objection and appeal are well founded and in the best interest of the Class, then they will post the required security and proceed.  On the other hand, if the appeal is nothing more than a method of hijacking the Settlement in order to extort a bounty from Class Counsel, then by requiring sufficient security this Court will bend Bandas' cost-benefit analysis such that it will no longer be financially risk free for Bandas to pursue their objection through to appeal in an effort to block thousands of Class Members from receiving their elected Settlement benefits.

The bond amount requested by Plaintiffs on behalf of themselves and the Settlement Class Members will provide for: (i) security for expected appellate fees and costs under F.R.A.P. 7 and (ii) the (at least partial) preservation of the status quo on behalf of the Settlement Class Members to account for the delay in distribution of the benefits of the Settlement under F.R.A.P. 8.

## II.   LEGAL STANDARD: F.R.A.P. 7 and 8

Federal Rule of Appellate Procedure 7 provides that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  The Eleventh Circuit has held that under F.R.A.P. 7, this Court has discretion to require Bandas to post a bond to secure payment of appeal costs. *See Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002).  In particular, a bond pursuant to F.R.A.P. 7 should be imposed where necessary to protect "from the burdens that stem from being forced to defend frivolous lawsuits." *Id.* at 1333. As noted by the Eleventh Circuit, "an

appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond[.]" *Id*. Rule 7 authorizes the Court to forecast the outcome of the appeal. *Adsani v. Miller*, 139 F.3d 67, 97; *Sckolnick*, 820 F.2d at 15. The costs that can be included in a Rule 7 bond are not limited to costs defined by F.R.A.P 39.[3] *Pedraza*, 313 F.3d at 1323. The district court has substantial discretion to determine the amount of a bond necessary to ensure the payment of costs on appeal. *Id*. at 1327; *Sckolnick v. Harlow*, 820 F.2d 12, 15 (1st Cir. 1987). Thus, the nature and amount of an appeal bond is left to the sound discretion of the district court. *Farris v. Standard Fire Ins. Co*., 250 Fed. App'x 486, 489 (6th Cir. 2008).

F.R.A.P. 8 provides for supersedeas bonds to cover sums relating to the merits of the underlying judgment. *In re Checking Account Overdraft Litig.*, No. 08-cv-23323, 2012 WL 456691, at *2 (S.D. Fla. Feb. 14, 2012) (citing *Adsani v. Miller*, 139 F.3d 67, 79 (2nd Cir. 1998)). Here, because Bandas' appeal prevents distribution of the Settlement benefits, the appeal constitutes an actual stay of Judgment and a bond is thus appropriate under F.R.A.P. 8. *Id*. (citing *In re Broadcom Securities Litig*., SACV 01-275 (C.D. Cal. Dec. 5, 2005) (requiring bond including costs of delay equaling $517,700)). Courts commonly impose appeal bonds in the class action context. *See Aboltin v. Jeunesse LLC*, No. 17-CV-1624, 2019 WL 1092789, at *4 (M.D. Fla. Feb. 15, 2019) (granting motion for appeal bond and requiring posting of a $70,000 appeal bond pursuant to F.R.A.P. 7 and 8); *In re Cardizem CD Antitrust Litig*., 391 F.3d 812, 816–17 (6th Cir. 2004) (endorsing the trial court's imposition of a $50,000 appeal bond); *Barnes v. FleetBoston Fin. Corp.*, No. 01-cv-1039, slip op. at 2 (D. Mass. Aug. 22, 2006) (ordering imposition of $645,111 appeal bond).

---

[3] F.R.A.P 39(e) provides that "[t]he following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule: (1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedes bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal."

When determining if an appeal bond is appropriate, courts consider: (i) the appellant's financial ability to post a bond; (ii) the merits of the appeal; (iii) whether the appellant has shown any bad faith or vexatious conduct; (iv) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful (*Schied v. Davis*, No. 08-cv-10005, 2008 WL 3852264, at *1 (E.D. Mich. Aug. 18, 2008) (citations omitted)); and (v) the appellant's attorney's prior actions. *See In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2010 WL 2505677, at *2 (S.D.N.Y. June 17, 2010).

## III.   ARGUMENT

Bandas is delaying the completion of a settlement that is overwhelmingly supported by the Class Members by pursuing an appeal that cannot improve the benefits ultimately provided to any of the Settlement Class Members. The Court should exercise its discretion under F.R.A.P 7 and Rule 8 to require Bandas to post a sizable appeal bond.  *See Sckolnick v. Harlow*, 820 F.2d 13 (1st Cir. 1987) (upholding imposition of appeal bond under Rule 7 based on plaintiff's history of litigiousness ad implication that appeal was frivolous); *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, MDL No. 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003); *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 124, 128 (S.D.N.Y. 1999) (citing *Adsani v. Miller*, 139 F.3d. 67 (2nd Cir. 1998) (in setting the amount of the Rule 7 bond, "it is appropriate to consider the 'merits of the appeal itself'").

Plaintiffs request that the amount of security this Court orders Bandas to deposit be sufficient to (i) secure the expected appeal costs pursuant to FRAP 7, and (ii) preserve (at least partially) the status quo on behalf of the Settlement Class. As such, it is appropriate to require Bandas to post an appeal bond totaling at least $125,000.00 to proceed with the appeal.

6

The first category of costs under F.R.A.P 39 is routinely included in appeal bonds. *See e.g.,* *O'Keef v. Mercedes-Benz USA, LLC*, No. 01-cv-2902, 2003 U.S. Dist. LEXIS 9838 (E.D. Pa. 2003) (including Rule 39(c) costs of copying, printing, and reproducing documents in an appeal bond); Wright, Miller & Cooper, *Federal Practice & Procedure* §3953 (3rd Ed. 1999). Class Counsel anticipate incurring costs taxable under Rule 39(e), including the estimated cost for printing and copying briefs and other submissions, in the approximate amount of $5,000.00—an amount well in line with costs regularly included in appeal bonds required by other courts. *See In re Checking Account Overdraft Litig.*, 2012 WL 456691, at *3.

The second and third categories represent an amount of security necessary to preserve the status quo and compensate the class for the delay and risk associated with an appeal that will not, even if successful, yield any benefit to the Settlement Class Members. The Settlement does not permit distributions to Settlement Class Members until after the resolution of any appeals. *See* Settlement Agreement (Dkt. No. 45-1, at ¶¶ 30, 75 and 76) (distribution to Settlement Class Members only after the "Effective Date," which does not occur until after final resolution of any appeal). Therefore, Bandas' appeal will delay the distribution of approximately $2,267,570.00 to the non-objecting Class Members (*see* Declaration of Kari Grabowski re: Notice and Settlement Administration, Dkt. No. 69-3, at ¶ 25) for which Bandas should be required to post security. *In re Checking Account Overdraft Litig.*, 2012 WL 456691, at *2 ("because the filing of this appeal prevents distribution of the Settlement proceeds as ordered by this Court's Final Judgment, it is an actual stay of Judgment and bond is appropriate") (collecting authorities); *In re Progressive Ins. Corp. Underwriting & Rating Practices Litig.*, No. 03-cv-01519, 2007 WL 9752859, at *1 (N.D. Fla. Feb. 13, 2007) ("A supersedeas bond serves to secure 'the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an

ineffectual appeal'") (citing *Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979)). As in other cases involving ineffectual appeals, Plaintiffs urge the Court to order Bandas to deposit $120,000.00 pursuant to F.R.A.P. 8, in addition to a $5,000.00 appeal costs bond pursuant to F.R.A.P. 7.  This sum represents merely 5% of the sum being delayed and far less than the "standard" "full amount of the judgment [] required to stay the execution of a judgment[]." *In re Progressive Ins. Corp. Underwriting & Rating Practices Litig.*, 2007 WL 9752859, at *1 (citing *Poplar Grove*, 600 F.2d at 1191) (also stating "[i]f a court chooses to depart from the usual requirement of a full security supersedeas bond to suspend the operation of an unconditional money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for such a departure").

### A.    Bandas is presumed to have the financial ability to deposit the requested security with the Clerk of this Court.

Courts assume that appellants are financially able to post appeal bonds unless they demonstrate otherwise. *See In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 201, 213 (S.D.N.Y 2010) (citations omitted); *see also Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998) (finding that "without any showing of [appellant's] financial hardship," the imposition of a bond is not an impermissible barrier to appeal); *In re Time Warner*, No. 02-CV-5575 (SWK), 2007 WL 2741033, at *2 (S.D.N.Y. Sept. 20, 2007) (concluding that the appellant was not arguing that it lacked the financial ability to post a bond where it did not submit financial information). In this case, Objector Pinto is represented by two successful law firms, and the appeal bond requirement should be an expected expense. Accordingly, this factor favors the imposition of the requested security.

**B.      Bandas' appeal lacks merit.**

Bandas' appeal is without merit, as Bandas will only be able to make arguments on appeal that were previously raised before, and rejected by, this Court. *Kensington Rock Island Ltd. P'ship v. Am. Eagle Partners*, 921 F.2d 122, 124–25 (7th Cir. 1990). To prevail on appeal Bandas will have to demonstrate that this Court abused its discretion in refusing to apply CAFA to determine the amount of attorneys' fee award that it granted in its Final Approval Order. *See Rodriguez v. Molina Healthcare Inc.*, 806 F. App'x 797, 802 (11th Cir. 2020) ("We review a district court's award of attorney's fees for abuse of discretion"). The Settlement was approved preliminarily and finally after lengthy and careful review, and the attorneys' fees were granted only after extensive review of Class Counsel's submissions and Bandas' objection and oral argument presentation— and only after the Court already reduced the fees requested by Class Counsel.

Bandas' objection to the attorneys' fees relies primarily on the argument that this is a "coupon" settlement under the Class Action Fairness Act, 28 U.S.C. § 1712 ("CAFA"). However, and as the Court correctly noted, the Settlement makes up to $35 million available from which the 1.26 million Settlement Class Members can claim up to a $35 *Cash* Award, and therefore is not a coupon settlement as contemplated by CAFA. (Final Approval Order, Dkt. No. 74, at 7–8.) Bandas further mischaracterizes the Voucher Award as a "coupon" under CAFA and asserts that it is the "primary" benefit of the Settlement despite the fact that the Settlement provides for $35 million in *cash* compensation. And as the Court noted in the Final Approval Order, the Class Members who submitted claims found the Cash Awards to be equally valuable to the Voucher Award. Indeed, had the Settlement provided solely for the $35 Cash Award, Bandas' arguments would be entirely moot, even though the Settlement Class Members who chose the $150 Voucher Award would clearly be worse off. Further, and as the Court also noted, because CAFA is inapplicable, Bandas'

arguments that the attorneys' fees are disproportionate to the amount claimed by Class Members fails in the face of binding Eleventh Circuit authority that attorneys' fees are to be calculated based on the total amount of settlement benefits made available to the Class. (*See id.* at 23–27.) Importantly, Bandas' appeal is also undercut by the fact that the Court's Final Approval Order actually *reduced* the amount of attorneys' fees ultimately awarded, demonstrating that the Court did not abuse its discretion or overlook any potential information or arguments raised. (*See* Dkt. No. 51; Dkt. No. 74.) As such, Bandas' appeal has no reasonable expectation of altering the Court's Order based on law or fact. Instead, the appeal only harms the Settlement Class by delaying distribution of the Settlement benefits without providing any enhancement of the benefits provided to the Settlement Class.

Finally, as the court in *In re: Checking Account Overdraft Litigation* found, Bandas' appeal cannot provide *any* value to the Settlement Class Members to offset the "cost" and "further delay" imposed by their appeal. 2012 WL 456691, at *2. This is because the nature of Bandas' objection – which is limited solely to the attorneys' fees awarded – will not result in any modification to the actual benefits provided by the Settlement, which are set at $35.00 cash for Settlement Class Members who chose the Cash Award and a $150.00 Voucher Award for Settlement Class Members who chose the Voucher Award. Simply put, even if the appeal results in the attorneys' fees being reduced to *zero*, the terms of the Settlement will remain the same and Settlement Class Members will still receive their elected award ($35.00 cash or a $150 Voucher Award). In short, *no Settlement Class Member can realize <u>any</u> benefit from Bandas' appeal*.

### C. Bandas' history and motivation in pursuing their objection and subsequent appeal warrant the imposition of the requested appeal bond.

The attorney-driven nature of Bandas' appeal is transparent. Bandas' arguments lack merit and the appeal itself is maintained with disregard for the best interest of the Settlement Class. By

appealing, Bandas have "temporarily tak[en] 'control of the common rights of all' the class members and thereby assumes 'a duty to fairly represent those common rights.'" *Pearson v. Target Corp.*, No. 19-cv-3095, 2020 WL 4519053 (7th Cir. Aug. 6, 2020). However, because Bandas' appeal cannot result in any benefit to the Settlement Class Members, as Bandas did not actually raise any arguments challenging the merits of the Settlement or the benefits it offered, Bandas have breached their duty to the Settlement Class Members by sacrificing the interests of the Settlement Class Members – a prompt distribution of the Settlement proceeds – for their own interests of either obtaining some kind of financial compensation or convincing the Eleventh Circuit that the Settlement as a whole should be overturned altogether and the Settlement Class Members be left with nothing.

Serial objectors who employ objections, and subsequent frivolous appeals, as leverage to extort settlements in this manner interfere with the system and "often delay and unnecessarily complicate class proceedings." *Newberg on Class Actions* §15:37. The Federal Judicial Center therefore advises courts to "[w]atch out…for…objections from professional objectors who seek out class actions to extract a fee by lodging . . . unhelpful protests." Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 15 (2nd ed. 2009). Federal courts are also "increasingly weary of professional objectors," who "are a pariah to the functionality of class action lawsuits, as they maraud proposed settlements – not to assess their merits on some principled basis – but in order to extort the parties…into ransoming a settlement that could otherwise be undermined by a time consuming appeals process." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003); *Snell v. Allianz Life Ins. Co. of N. Am.*, No. 94-cv-2784, 2000 WL 1336640, at *9 (D. Minn. Sept. 8, 2000); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F.Supp.2d 942, 975 (E.D. Tex. 2000). Courts across the country have condemned

this conduct, which amounts to a shakedown designed to force defendants and/or class counsel to buy off professional objectors so that the class settlement may proceed. *See, e.g., In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011) ("[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing") (quotations omitted, alteration in original). As the U.S. District Court for the Southern District of Ohio noted:

> "Class actions…attract those in the legal profession who subsist primarily off the skill and labor of, to say nothing of the risk born by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obscuring payment to [class counsel] and the class in the hope that [class counsel] will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors…"

*In re Cardinal Health, Inc. Sec. Litig.*, 550 F.Supp.2d 751,754 (S.D. Ohio, 2008).

The law firm associate with Bandas and that is almost solely responsible for bringing the objection and subsequent appeal is widely recognized as a "professional" (or "serial") objector with suspect motives. Numerous court rulings have found Bandas to have filed such objections in bad faith—even subjecting the firm to disciplinary action. Bandas frequently engages in what courts and commentators have characterized as "objector blackmail." Fitzpatrick, Brian T., *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1624–25, 1633–41 (2009). Mr. Bandas himself "has been excoriated by Courts for this conduct." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) ("Bandas is . . . improperly attempting to 'hijack' the Settlement benefits from deserving Class Members and dedicated, hardworking counsel, solely to coerce ill-gotten, inappropriate, and unspecified 'legal fees'"). The shakedown begins at the district court and culminates while the case is pending before the Court of Appeals:

> Objectors' counsel have a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class.

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 06-cv-0225, 2010 WL 786513, at **1–2 (D. Nev. Mar. 8, 2010).

In short, unlike objectors who challenge class action settlements in good faith and in the best interests of the other Class Members, Bandas seeks to stall the resolution of class actions and prevent Class Members from obtaining the relief they are entitled to. Their motivations are transparently pecuniary. Further, Bandas' appeal will have real costs for the Class Members, as the distribution of the Settlement proceeds will be delayed for months without any possibility that the appeal itself will yield any benefit to the Class. Absent intervention in the form of an appeal bond that is commensurate with the costs being born by the Settlement Class Members, Bandas will subject this cost upon the Class without assuming any financial risk.

**D.      A significant risk of nonpayment exists.**

Finally, Class Counsel and the Settlement Class Members face a significant risk of never receiving any post-appeal costs to which they may be entitled absent a bond. Further, such post-appeal litigation will only serve to further delay the receipt of the Settlement benefits by the Settlement Class Members, and will fail to compensate Settlement Class Members for the delay caused by an appeal not taken in their best interest. In light of these risks, Bandas should be required to post significant security in order to continue with the appeal.

**D.      The amount of the appeal bond requested is reasonable.**

While the precise amount of the bond is left to the sound discretion of this Court, the practical reality is that "[r]equiring too small a bond, or no bond at all, may encourage frivolous, time-consuming, harassing appeals." *Page v. AH Robins Co.*, 85 F.R.D. 139, 139–40 (E.D. Va.

1980). This is particularly likely in this case where Bandas will otherwise face no meaningful financial risk in maintaining the appeal and delaying Settlement Class Members from obtaining their Settlement benefits.  Indeed, as previously stated, a bond in the amount of the *entire* amount being stayed is appropriate:

> In order to preserve the status quo, the District Court has the inherent power to set the amount of the supersedeas bond, which may include the whole amount of the judgment remaining unsatisfied, costs on appeal, interest, and damages for delay. *Poplar Grove*, 600 F.2d at 1191.  Although Fed. R. Civ. P. 62(d) does not precisely define the amount and conditions of a supersedeas bond, it has been read consistently with he earlier rule, Civil Rule 73(d).  *Id*; *Trans World Airlines, Inc. v. Hughes*, 515 F.2d 173 (2nd Cir. 1975), *cert. denied* 424 U.S. 932. As such, this Court may impose such terms and conditions as to the security of the judgment that are just and necessary for the protection of the parties. *Underwood v. Malony*, 245 F.2d 797 (3rd Cir. 1957).

*Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-0986, Dkt. No. 1315-4, at 20–24 (S.D. Fla. Apr. 7, 2006) (report and recommendation adopted *Allapattah Servs., Inc.*, 2006 WL 1132371, at *9)).

Bandas' appeal can be expected to last at least a year and will delay distribution of $2,254,420 of Settlement benefits to the Class Members during that time. The Settlement does not permit distributions to Settlement Class Members until after the resolution of any appeals. *See* Settlement Agreement (Dkt. No. 45-1 at ¶¶ 30, 75 and 76) (distribution to Settlement Class Members only after the by "Effective Date;" which is not delayed by the Bandis appeal). Further, Bandas' interests are adverse to the interests of the Settlement Class Members, as the appeal, even if successful, cannot benefit them in any way. Therefore, a bond of at least $125,000.00 is reasonable when viewed in light of the facts present here. *See, e.g.,In re Checking Account Overdraft Litig.*, 2012 WL 456691, at *3 (ordering class action objectors to post a bond in the amount of $616,338.00 to "ensure payment of costs to the class plaintiffs for defending the appeal and the resulting delay of distribution of funds to the class."); *Aboltin v. Jeunesse LLC*, 2019 WL 1092789, at *4 (ordering class action objector to post a bond of $70,000); *Conroy v. 3M Corp.*,

No. 00-cv-2810, Order Granting Plaintiff's Motion for Appellant Bond (N.D. Cal. Aug. 10, 2006) (ordering class action objectors to post a bond of $431,167).

## IV.    CONCLUSION

For the reasons set forth herein, requiring Bandas to post an appeal bond of $125,000.00 (consisting of a $120,000.00 appeal bond pursuant to F.R.A.P. 8 and a $5,000.00 appeal bond pursuant to F.R.A.P. 7) is justified and appropriate given the meritless nature of Bandas' appeal and the significant delay and costs being imposed by Bandas on the Settlement Class Members. Plaintiffs respectfully request that this Court enter an order requiring Bandas to post an appeal bond of at least $125,000.00, and for such other relief as the Court deems appropriate.

Dated: February 3, 2021                    Respectfully submitted,

                                           /s/ John R. Cox
                                           JOHN R. COX

                                           *Attorneys for Plaintiffs*

UNDERWOOD & RIEMER, P.C.
Earl P. Underwood, Jr.
21 South Section Street
Fairhope, AL 36532
Tel: (251) 990-5558
Fax: (251) 990-0626
epu@urlaw.onmicrosoft.com

MCGUIRE LAW, P.C.
Myles McGuire
Evan M. Meyers (admitted *pro hac vice*)
Eugene Y. Turin (admitted *pro hac vice*)
55 West Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

JRC LEGAL
John R. Cox
30941 Mill Lane, Suite G-334

15

Spanish Fort, AL 36527
Tel: (251) 517-4753
john@jrclegal.net


BOCK, HATCH, LEWIS & OPPENHEIM, LLC
Robert M. Hatch (*pro hac vice*)
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Tel: (312) 658-5500
service@classlawyers.com

KENT LAW OFFICES
Trinette G. Kent
3219 Camelback Rd., Ste. 588
Phoenix, AZ 85018
Tel: (480) 247-9644
tkent@kentlawpc.com

MARK K. WASVARY, P.C.
Mark K. Wasvary
2401 West Big Beaver Road, Suite 100
Troy, MI 48084
Tel: (248) 649-5667
mark@wasvarylaw.com

MCMORROW LAW, P.C.
Michael J. McMorrow
118 North Clinton St., Suite 108
Chicago, IL 60661
Tel: (312) 265-0708
mike@mjmcmorrow.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 3, 2021, I electronically filed the foregoing *Plaintiffs'*

*Motion for Appeal Bond* with the Clerk of the Court using the CM/ECF system. A copy of said

document will be electronically transmitted to all counsel of record.

/s/ John R. Cox
John R. Cox

1