IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SUSAN DRAZEN, o*n behalf of herself and others similarly situated*<br>      Plaintiffs, | )<br>)<br>)<br>) | |
| vs. | ) | CIVIL ACTION: 1:19-00563-KD-B |
| GODADDY.COM, LLC, | )<br>)<br>) | |
|       Defendant. | ) | |
| | | |
| JASON BENNETT, o*n behalf of himself and others similarly situated*<br>      Plaintiffs, | )<br>)<br>)<br>) | |
| vs. | ) | CIVIL ACTION: 1:19-00563-KD-B |
| GODADDY.COM, LLC, | )<br>)<br>) | |
|       Defendant. | ) | |

**ORDER**

This action is before the Court on the parties "Unopposed Joint Motion for an Indicative Ruling Approving Objector Settlement Agreement and Motion to Expedite." (Doc. 88). For the reasons set forth herein, this Court finds the parties' motion raises substantial issues; the Court would not be inclined to grant the parties' joint motion upon remand.

**I.    Background**

On December 23, 2020, this Court entered its Final Judgment and Order Approving Class Settlement. (Doc. 74). Thereafter, Objector Juan Pinto appealed to the United States Court of Appeals for the Eleventh Circuit. (Doc. 75). The parties indicate now that "Class Counsel and the Objector (collectively, the "Settling Parties") have reached an agreement to settle the appeal in exchange for certain consideration…" (Doc. 88 at 2). The Objector Settlement Agreement in sum

includes a term that Pinto will dismiss his appeal with prejudice if this Court "enters an indicative ruling approving the Objector Settlement Agreement; the Eleventh Circuit remands the matter to the Court without modifying the existing Final Order; and, the Court enters a formal order approving the Objector Settlement Agreement when jurisdiction is returned." (Doc. 88 at 5). The Objector Settlement Agreement awards Pinto's attorneys $375,000 (to come from the attorneys' fees awarded to Class Counsel previously) and a $5,000 incentive award to Pinto. (Id.).

The parties jointly move now for the Court to enter an indicative ruling approving the Objector Settlement Agreement "so that they can ask the Eleventh Circuit to remand for entry of a formal order by this Court and subsequent dismissal of the appeal in the Eleventh Circuit." (Doc. 88 at 2).

II.     **Objector Incentive Award**

First, the Objector Settlement Agreement includes a term which would award Pinto a $5,000 incentive award. The parties contend the Eleventh Circuit's decision in Johnson v. NPAS Solutions, LLC, 975 F.3d 1244 (11th Cir. 2020) "was specific to its disapproval of incentive awards for class representatives." (Doc. 88 at 6, n.4). According to the parties, Johnson "does not speak to payments for objectors." (Id.).

The parties reading of Johnson is too narrow. The Eleventh Circuit in Johnson explained that the Supreme Court's holdings in Trustees v. Greenough, 105 U.S. 527 (1882) and Central Railroad & Banking Co. v. Pettus, 113 U.S. 116 (1885) "establish limits on the types of awards that attorneys and litigants may recover from the fund." Johnson, 975 F.3d at 1256. Specifically, in discussing Trustees v. Greenough, 105 U.S. 527 (1882), the Eleventh Circuit explained:

> Importantly for our analysis of modern-day incentive awards, however, the Court went on to hold that "there [was] one class of allowances" that was "decidedly objectionable"—namely, "those made for [Vose's] personal services and private expenses." Id. at 537. The Court explained that "[t]he reasons which apply to his

> expenditures incurred in carrying on the suit, and reclaiming the property subject to the trust"—*i.e.*, those that it approved—"do not apply to his personal services and private expenses." Id. The Court reasoned that while there might be reasons to award *trustees* "for their personal services"—*e.g.*, "to secure greater activity and diligence in the performance of the trust, and to induce persons of reliable character and business capacity to accept the office of trustee"—such "considerations have no application to the case of a creditor seeking his rights in a judicial proceeding." Id. at 537–38. In the case of a creditor, like Vose, "the allowance of a salary for [his] time and ... [his] private expenses" in carrying on litigation "would present too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interest of creditors." Id. at 538. The Court thus concluded that "[s]uch an allowance has neither reason nor authority for its support." Id.
>
> To sum up, then, the Supreme Court in Greenough upheld Vose's award of attorneys' fees and litigation expenses but rejected as without legal basis the award for his "personal services and private expenses"—in particular, the yearly salary and reimbursement for the money he spent on railroad fares and hotel bills.

Johnson, 975 F.3d at 1257. The Court applied the holdings from Greenough and Pettus to the facts of the case before it—to the class representative context—but the prohibition announced by the Supreme Court in Greenough and Pettus has broader implications. Notably, in Greenough the Supreme Court reasoned that awarding a creditor "'a salary for [his] time…and [his] private expenses' in carrying on the litigation 'would present too great a temptation to parties to intermeddle in the management of valuable property or funds in which they only have the interest of creditors.'" Johnson, 975 F.3d at 1257 (citing Greenough, 105 U.S. at 538)). And Pettus reiterated the Supreme Court's holding in Greenough that a claim to be compensated for personal services and private expenses is "unsupported by reason or authority." Id. (citing Pettus, 113 U.S. at 122). The Eleventh Circuit in Johnson applied this reasoning to class representative incentive awards, holding:

> We take the rule of Greenough, confirmed by Pettus, to be fairly clear: A plaintiff suing on behalf of a class can be reimbursed for attorneys' fees and expenses incurred in carrying on the litigation, but he cannot be paid a salary or be reimbursed for his personal expenses. It seems to us that the modern-day incentive award for a

3

class representative is roughly analogous to a salary—in *Greenough*'s terms, payment for "personal services." *See, e.g.*, *1258 *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017) ("[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case."); *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (similar); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (similar).

If anything, we think that modern-day incentive awards present even more pronounced risks than the salary and expense reimbursements disapproved in *Greenough*. Incentive awards are intended not only to compensate class representatives for their time (*i.e.*, as a salary), but also to promote litigation by providing a prize to be won (*i.e.*, as a bounty). As our sister circuits have described them—even while giving them general approval—incentive awards are designed "to induce [a class representative] to participate in the suit," *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992), and "to make up for financial or reputational risk undertaken in bringing the action" and "to recognize [a class representative's] willingness to act as a private attorney general," *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *see also, e.g.*, *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (explaining that "applications for incentive awards are scrutinized carefully by courts who sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain").[1]

> FN 1: So far as we can tell, the only circuit to have directly confronted whether *Greenough* and *Pettus* prohibit incentive awards summarily dismissed the cases as "inapposite" because they presented a different "factual setting[ ]." *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 96 (2d Cir.), *cert. denied sub nom. Bowes v. Melito*, ––– U.S. ––––, 140 S. Ct. 677, 205 L.Ed.2d 440 (2019). We are unpersuaded by the Second Circuit's position. Other circuits have recognized the continuing vitality of *Greenough* as prohibiting awards for "private" and "personal" expenses in common-fund cases, although they haven't applied the decisions specifically to incentive awards. *See, e.g.*, *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1208 (6th Cir. 1992) (explaining that costs awarded to the shareholders' representative in derivative litigation "related to advancing the litigation" and were "not 'private' in the sense found objectionable in *Greenough*"); *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d at 571 (citing *Greenough* for the proposition that expenses other than attorneys' fees can be awarded out of a common fund, "provided they are not personal").

975 F.3d at 1258.

An incentive awards to class representatives "intended [] to compensate class representatives for their time" are indistinguishable from an incentive award to an objector seeking to do the same. Johnson, 975 F.3d at 1258. Similarly, awarding incentive awards to objectors "promotes litigation by providing a prize to be won (i.e., as a bounty)" in the same way that class representative incentive awards do. Id. Thus, even though the Eleventh Circuit in Johnson applied the rationales of Greenough and Pettus to the specific facts before it—namely class representative incentive awards—the holding extends logically to objector incentive awards. To hold otherwise would create an inconsistent result.

### III. Objector's Attorneys' Fees

The parties also included a term in the Objector Settlement Agreement in which "John R. Cox…has agreed to share $375,000 from the Fee and Expense Award with Objector for attorneys' fees and costs related to the objection." (Doc. 88 at 6). The parties contend the fee is reasonable because 1) it will be paid by Class Counsel and will not impact the class recovery in any way; 2) Objector's counsel has spent significant time and expense litigating the objection; 3) the objection assisted the Court in evaluating the class settlement; 4) it added non-monetary benefits to the class by creating an adversarial setting; 5) the objection ensured the Settlement Administrator would follow up with class members whose award was returned as undeliverable; and 6) the fee is reasonable as illustrated by the lodestar. See (Doc. 88 at 10-12).

"[T]he objector's entitlement to an award of attorneys' fees is dependent upon their ability to show that they have either (1) conferred some benefit on the class or (2) substantially improved the settlement under consideration." Faught v. American home Shield Corp., 2010 WL 10959224, at *1 (N.D. Ala. May 26, 2010) aff'd 444 Fed.Appx. 445, 446 (11th Cir. 2011). First, every objection Pinto made was overruled. His objections did not improve the terms of the Settlement

Agreement, much less *substantially* improve the Settlement. Compare with Faught, 2010 WL 10959224, at *3 (finding objections did not substantially benefit the class members where all objections but one were overruled and the only objection sustained "required them go through the Review desk process which their settlement established").

And, the objections did not confer a benefit on the class. The parties in part contend Pinto "ensur[ed] that the Settlement Administrator initiates an email campaign directed at class members whose Settlement Award is returned as undeliverable." (Doc. 88 at 12). The parties then attempt to quantify this benefit to the class by estimating the additional total of awards distributed if this "change" results in awards being distributed to class members when initially their award was "undeliverable." (Id.). Previously though, when Pinto objected to the Settlement Administration process on this exact issue, Plaintiffs cited the declaration of Kari Grabowski, Project Manager for the Settlement Administrator Epiq. (Doc. 61 at 30). There, the Plaintiffs contended the "settlement Agreement does not limit the Settlement Administrator's duty to 'verify mailing information,' including to send follow up email if deemed appropriate to obtain the correct mailing address…As stated in the declaration of Ms. Grabowski, the Settlement Administrator intends to do just that, which directly undercuts Bandas' [Pinto's] point." (Id.). Now, the parties seek to credit Pinto for ensuring the Settlement Administrator initiates a campaign Grabowski already intended on doing. The Settlement distribution process did not change as a result of this objection, presumably because that follow-up process was already anticipated and intended. Therefore, Pinto did not confer any benefit on the class with respect to this process.

And, though Pinto pointed out the Court's order on attorneys' fees was premature, the Court subsequently amended its premature order, carrying Plaintiffs' motion to the Final Approval Hearing. (Docs. 51, 55). And, the Court fully reconsidered Plaintiffs' motion for attorneys' fees.

Pointing out the Court's error, but ultimately losing all of his objections, does not warrant $375,000 in attorneys' fees. The Court would not find that reasonable.

IV. <u>Conclusion</u>

Accordingly, the parties' motion for an indicative ruling is **GRANTED**.[1] For the reasons discussed *supra*, this motion raises substantial issues, which at this juncture the Court would not be inclined to grant upon remand from the Eleventh Circuit Court of Appeals. The parties' "Motion to expedite" the briefing is **MOOT.** (Doc. 88 at 2).

**DONE** and **ORDERED** this the **22nd** day of **April 2021**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[1] Pursuant to Rule 62.1: "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed.R.Civ.P. 62.1. Thus, the Court is proceeding pursuant to Rule 62.1(3).